NUMBER 13-08-00365-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

SEBASTIAN WILLIE MEJIA, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 377th District Court

of Victoria County, Texas.

 


 MEMORANDUM OPINION

 

Before Chief Justice Valdez and Justices Rodriguez and Garza


 Memorandum Opinion by Chief Justice Valdez
 A jury found appellant, Sebastian Willie Mejia, guilty of unlawful possession of
cocaine weighing four grams or more but less than 200 grams with the intent to deliver, a
first-degree felony. See Tex. Health & Safety Code Ann. §§ 481.102(3)(D), 481.112(a),
(d) (Vernon Supp. 2009). After making an affirmative finding that Mejia used a firearm
during the commission of the offense, the jury assessed punishment at life imprisonment
and a fine of $10,000. By four issues, Mejia contends that the evidence is legally and
factually insufficient to establish that he (1) knowingly possessed the cocaine, (2) had the
intent to deliver cocaine, and (3) used a firearm in the commission of the offense; and that
the sentence imposed is cruel, unusual, and disproportionate. We affirm.

I. Background

 Mejia was indicted for knowingly possessing cocaine in the amount of four grams
or more but less than 200 grams with the intent to deliver. See id. § 481.112(a), (d). Mejia
pleaded not guilty and a jury trial commenced on March 5, 2008.

A. The State's Evidence

 At trial, the State called several witnesses, including City of Victoria police officers
Brandon Torres and Michael Smith, as well as Victoria County Sheriff's Department officers
David Castillo, Dale Kolar, and Kellye Stillwell.

 Officer Smith testified that on February 6, 2007, he and his partner, Officer Torres,
initiated a stop after they observed a 1999 blue Grand Am with excessive window tint
traveling on U.S. Highway 59. The officers exited their patrol car and approached the
vehicle; Officer Smith approached the driver's side and Officer Torres approached the
passenger side. Officer Smith testified that as he approached, he was unable to determine
the number of occupants in the vehicle due to the tint on its back windows. When the
officers were about an "arm[']s length" away from the back of the vehicle, Officer Smith
directed the driver, later identified as Mejia, to lower the windows. As the windows
lowered, a strong scent of marihuana emanated from the vehicle. The officers had Mejia
and the other occupants--front seat passenger and owner of the vehicle, Jesus Perez, and
backseat passenger, Shandolyn Vasquez--exit the vehicle. No weapons were found on
the person of any of the occupants. However, a small digital scale, whose surface later
tested positive for cocaine, and small unused "plastic baggies," measuring approximately
one inch by one inch, were found in Mejia's right front pocket. Officer Smith testified that
he knew of no legitimate use for the small "plastic baggies." Officer Smith verified that the
tint was excessive and monitored the occupants while Officer Torres conducted a search
of the vehicle. (1)

 Officer Torres testified that he began his search on the passenger side of the
backseat and continued around the vehicle in a counterclockwise direction. Officer Torres
located two semi-automatic handguns underneath two jackets on the backseat floorboard
on the passenger side of the vehicle. (2) Officer Torres testified that the guns, a 9 millimeter
and a .25 caliber Titan, were loaded and that each of the guns "had a loaded round in the
barrel" and would have fired if someone pulled the trigger. Next to the firearms, Officer
Torres found a "clear baggie" that contained ten rounds of .25 caliber ammunition, the
caliber for one of the firearms. Officer Torres then found a "clear baggie" that contained
a substance, later identified as cocaine, inside and near the top of a zipped-up black
makeup bag on the backseat behind the driver. Later testimony revealed that the clear
baggie contained either 4.18 or 4.19 grams of cocaine, which Officer Torres testified was
more than "a single dosage unit." 

 A women's wallet that contained a small bag of marihuana and $162.36 was found
near the makeup bag. Officer Torres stated that the guns, the black makeup bag that
contained the cocaine, and the wallet were "within arm's reach" of all the vehicle's
occupants. Officer Torres further testified that he also located two pieces of compacted
marihuana in the center console cup holder in the front seat as well as a plastic bottle of
Mannitol, a dietary supplement, that is often"cut up" and mixed with cocaine before sale. (3) 
Officer Torres testified that none of the occupants claimed ownership of either the firearms
or the drugs while at the scene. 

 Officer Torres and Officer Smith testified about the presence of Mannitol, as well as
the small "plastic baggies" and scale found on Mejia's person. Officer Torres testified that
the small "plastic baggies" located in Mejia's pocket could be used to package $20 or $40
amounts of cocaine for individual sale. He also testified that an intent to deliver could be
inferred from the small "plastic baggies" and scale found on Mejia's person, as well as the
presence of Mannitol in the vehicle. Officer Smith testified that digital scales and Mannitol
are typically used in the sale and distribution of controlled substances. 

 On cross-examination, Officer Torres admitted that possession of Mannitol is legal
and that the lid of the Mannitol bottle did not test positive for cocaine. Further, he stated
that Mejia did not attempt to flee or provide a false name to the officers. Officer Torres
also stated that the firearms were concealed by at least one jacket and were not clearly
visible from the driver's seat of the vehicle; however, the makeup bag that contained the
cocaine was within the driver's clear view. 

 After the arresting officers testified, Officers Castillo, Kolar, and Stillwell testified
regarding Mejia's conduct at his booking in the Victoria County Jail. Officer Castillo
testified that he was present at the booking of Mejia, Perez, and Vasquez and that he
heard Mejia shout to Vasquez, "Take everything. Say everything is yours," and "I'll take
care of you." Officer Kolar, another officer present at the booking, testified that Mejia
shouted to Vasquez and instructed her "to take the rap" because he and Perez were prior
felons and she had no criminal record. Officer Stillwell testified that she heard Mejia shout
several times to Vasquez to "take the rap" because "she [Vasquez] would receive
probation."

B. The Defense's Evidence

 The defense called Vasquez and Perez, the two passengers of the car, to testify on
Mejia's behalf. Vasquez testified that on February 5, 2007, she, Perez, and Mejia traveled
to Corpus Christi, Texas, to drop off Perez's daughter. Later that evening, the trio went to
Aloha's, a Corpus Christi "strip club." Vasquez testified that neither she nor Mejia were
cocaine users; however, she testified that she purchased cocaine in the women's restroom
at Aloha's and placed it into her black makeup bag. 

 According to Vasquez, the trio left Corpus Christi on February 6, 2007, and were
stopped by police as they drove back to Victoria. Vasquez testified that before the vehicle
was stopped, she was asleep in the backseat with her head rested upon a "CD case" that
contained the two guns that were later found by Officer Torres. Vasquez testified that she
had recently purchased the guns after receiving threatening phone calls because she was
concerned for her safety, as well as the safety of her children. Vasquez stated that the
guns were not displayed or removed from the "CD case" at anytime and that she did not
show or tell Mejia about the guns and cocaine.

 Vasquez testified that she had pleaded guilty to the offense of delivery and
possession of a controlled substance that arose from the events in question. Vasquez also
testified that no one forced her to take the plea and that the fact that she had dated Mejia
had no effect on her entering the plea. When asked why she pleaded guilty, Vasquez
stated, "[B]ecause it was mine."

 On cross-examination, Vasquez admitted that in 2001, she was convicted for
making a false report to a peace officer. Vasquez did not recall whether Mejia had
requested that she "take the rap" for the cocaine and firearms. Vasquez testified that she
had only had the firearms "a couple of days." She testified that she purchased the .25
caliber Titan from an individual while she was in Corpus Christi, but she could not recall
where she purchased the 9 millimeter or how much she had paid for either gun. (4) In
addition, Vasquez testified that she did not know how may bullets a magazine from a .9
millimeter or .25 caliber Titan holds, did not know how to load the guns, and did not know
where the safety switch on either of the guns was located. 

 On re-direct examination, Vasquez testified that she had not been romantically
involved with Mejia since July 2007. She also stated that, before buying the 9 millimeter
and .25 caliber Titan, she had neither owned a gun nor had any training or experience with
guns.

 Perez testified that Mejia was driving Perez's blue Grand Am when he was pulled
over by police on the day in question. Perez testified that he was unaware that Vasquez
had purchased cocaine at Aloha's the night before. He also testified that he was the owner
of the digital scale found in Mejia's pocket, as well as the marihuana found in the front seat
cup holder. Perez testified that he knew nothing about "cutting cocaine" and that he was
unaware that cocaine was in the vehicle until he "saw the officer pull it out and . . . weigh
it on the spot." Perez testified that the officers weighed the cocaine on the digital scale that
they had confiscated from Mejia. Perez stated that at the time of the stop, Vasquez
informed the officers that the guns and drugs were hers. On cross-examination, Perez
testified that he had not previously stated that the officers weighed the cocaine on the
digital scale found in Mejia's pocket because no one had ever asked him.

 After hearing and considering the evidence, the jury convicted Mejia of unlawful
possession of cocaine weighing four grams or more but less than 200 grams with the intent
to deliver. See id.

II. Sufficiency

 In his first three issues, Mejia challenges the legal and factual sufficiency of the
evidence supporting his conviction and the jury's finding that he used a firearm in the
commission of the offense.

A. Standards of Review

 In reviewing the legal sufficiency of evidence, an appellate court must review all the
evidence in the light most favorable to the verdict, and ask whether "'any rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt'--not
whether 'it believes that the evidence at the trial established guilt beyond a reasonable
doubt.'" Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting Jackson
v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original)). The trier of fact is the sole
judge of the facts, the credibility of the witnesses, and the weight given to testimony. See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Jackson, 443 U.S. at 318-19;
Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd).
We do not reevaluate the weight and credibility of the evidence, and we do not substitute
our own judgment for the trier of fact. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000) (en banc); Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.]
2000, pet. ref'd). We resolve any inconsistences in the evidence in favor of the judgment. 
Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

 In conducting a factual sufficiency review, a court of appeals reviews the evidence
in a neutral light to determine whether the evidence is so weak that the jury's verdict seems
clearly wrong and manifestly unjust or whether it is against the great weight and
preponderance of the evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006). Unless the record clearly reveals that a different result is appropriate, we must
defer to the fact finder's determination concerning what weight to be given to contradictory
testimony. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

B. Possession

 In his first issue, Mejia contends that the evidence is legally and factually insufficient
to establish that he knowingly possessed the cocaine found inside the vehicle.

 1. Applicable Law

 To prove possession, the State must show that the accused (1) exercised actual
care, custody, control, or management of the controlled substance and (2) was conscious
of his connection with it and knew what it was. Poindexter v. State, 153 S.W.3d 402, 405
(Tex. Crim. App. 2005); Robinson v. State, 174 S.W.3d 320, 324 (Tex. App.-Houston [1st
Dist.] 2005, pet. ref'd). When an accused is not in exclusive possession of the place where
the contraband is found, it cannot be concluded or presumed that the accused had
knowledge of or control over the contraband unless there are additional independent facts
and circumstances connecting or linking the accused to the knowing possession of the
contraband. Robinson, 174 S.W.3d at 325 (citing Rhyne v. State, 620 S.W.2d 599, 601
(Tex. Crim. App. 1981); Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.-Houston [1st
Dist.] 2002, pet. ref'd)). 

 Several factors to help establish this "affirmative link" between the accused and the
contraband include, but are not limited to, the following: (1) whether the contraband was
in plain view or recovered from an enclosed place; (2) whether the accused was the owner
of the premises or had the right to possess the place where the contraband was found or
was the owner or driver of the automobile in which the contraband was found; (3) whether
the accused was found with a large amount of cash; (4) whether the contraband was
conveniently accessible to the accused or found on the same side of the vehicle as the
accused was sitting; (5) whether the contraband was found in close proximity to the
accused; (6) whether a strong residual odor of the contraband was present; (7) whether
the accused possessed other contraband when arrested; (8) whether paraphernalia to use
the contraband was in view or found on the accused; (9) whether the physical condition of
the accused indicated recent consumption of the contraband in question; (10) whether
conduct by the accused indicated a consciousness of guilt; (11) whether the accused
attempted to escape or flee; (12) whether the accused made furtive gestures; (13) whether
the accused had a special connection to the contraband; (14) whether the occupants of the
premises gave conflicting statements about relevant matters; (15) whether the accused
made incriminating statements connecting himself to the contraband; (16) the quantity of
the contraband; and (17) whether the accused was observed in a suspicious area under
suspicious circumstances. Evans v. State, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App.
2006); Lopez v. State, 267 S.W.3d 85, 92 (Tex. App.-Corpus Christi 2008, no pet.). No
established or set formula of factors dictates a finding of a link to support a reasonable
inference of knowing possession of contraband. Lopez, 267 S.W.3d at 92. Moreover, the
number of factors present is not as important as the "logical force" they create to prove that
the offense was committed. Roberson, 80 S.W.3d at 735. Ultimately, we determine
whether the evidence is sufficient to link the accused to the contraband on a case-by-case
basis. Lopez, 267 S.W.3d at 92.

 2. Legal Sufficiency

 Mejia argues that the evidence is legally insufficient to prove that he knowingly
possessed the cocaine found in the vehicle because the State failed to affirmatively link
him to the contraband. We disagree. 

 "Convenient access to the contraband is an accepted factor that may affirmatively
link an accused to contraband found in a vehicle." Robinson, 174 S.W.3d at 326 (citing 
Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981); Hawkins v. State, 89
S.W.3d 674, 677 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd)). Contraband is
conveniently accessible to an accused when it is "within the close vicinity of the accused
and easily accessible while in the vehicle so as to suggest that the accused had knowledge
of the contraband and exercised control over it." Id. (citing Rhyne, 620 S.W.2d at 601;
Deshong, 625 S.W.2d at 329).

 Mejia was driving the Grand Am when it was stopped by Officer Torres and Officer
Smith. Officer Torres testified that he discovered the cocaine at the top of a zipped-up
black makeup bag in the backseat. According to Officer Torres, the vehicle driven by Mejia
was a "small vehicle," and the black makeup bag could be seen from the driver's seat and
was "within arm's reach" of Mejia. Officer Smith testified that it would have taken only
"seconds" for Mejia to transfer the contraband to another person inside the vehicle. 
Similarly, Officer Torres testified that there was ample time to move or secret the
contraband within the vehicle between the time the officers sounded the emergency signals
and when they approached the vehicle.

 This evidence offers strong support for the conclusion that the cocaine was within
the vicinity of and easily accessible to Mejia. See id. at 327 (concluding that cocaine
located in the back wall of a truck, which could be seen and accessed only by folding down
the truck's backseat, was "conveniently accessible" to the front seat passenger); Powell
v. State, 112 S.W.3d 642, 645-46 (Tex. App.-Houston [1st Dist.] 2003, pet ref'd) (noting
that being the driver of a vehicle in which contraband is found is an affirmative link to the
contraband). Furthermore, a digital scale and small "baggies" were found in Mejia's pocket
and traces of cocaine were found on the digital scale. This paraphernalia also serves as
an affirmative link that Mejia had care, custody, control, or management over the cocaine.

 Viewing the evidence in the light most favorable to the verdict, we conclude that a
rational jury could have found beyond a reasonable doubt that Mejia exercised actual care,
custody, control, or management of the cocaine, and that he was conscious of his
connection with it and knew what it was. See Robinson, 174 S.W.3d at 326-30. 

 3. Factual Sufficiency

 Mejia argues that the evidence is factually insufficient to prove that he knowingly
possessed the cocaine found in the black makeup bag because: (1) Perez testified that
he was the owner of the scale; (2) Vasquez "identified [the cocaine] as hers"; and (3) "the
State failed to produce anything other than a presumptive test at the scene" to show that
traces of cocaine were found on the digital scale. Again, we disagree.

 The jury is the sole judge of the credibility of the witnesses and may believe or
disbelieve any part of a witness's testimony. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.
App. 2000); Lee v. State, 259 S.W.3d 785, 792-93 (Tex. App.-Houston [1st Dist.] 2007,
pet. ref'd). The jury was free to discredit Perez's testimony that he owned the scale as well
as Vasquez's testimony that she was the owner of the cocaine. Moreover, although Mejia
argues that "the State failed to produce anything other than a presumptive test at the scene
to show what was contained on the scale" and that "such presumptive testing is not reliable
enough to prove that the residue on the scale was cocaine," Mejia did not object when
Officer Smith testified regarding the testing performed. Having failed to raise this challenge
in the trial court, Mejia has waived it on appeal. See Tex. R. App. P. 33.1.

 Viewing the evidence in a neutral light, we cannot conclude that the evidence is so
weak that the jury's verdict seems clearly wrong and manifestly unjust or that it is against
the great weight and preponderance of the evidence. See Watson, 204 S.W.3d at 414-15. 
Having concluded that the evidence was legally and factually sufficient to establish that
Mejia knowingly possessed the cocaine, we overrule Mejia's first issue.

C. Intent to Deliver

 In his second issue, Mejia contends that the evidence is legally and factually
insufficient to establish that he intended to deliver the cocaine.

 1. Applicable Law

 In order to prove that the accused intended to deliver contraband, the State must
prove that the accused intended "to transfer, actually or constructively, to another a
controlled substance." Tex. Health & Safety Code Ann. § 481.002(8) (Vernon Supp.
2009). Such intent can be proved by circumstantial evidence, including evidence regarding
an accused's possession of the contraband. Robinson, 174 S.W.3d at 331 (citing
Patterson v. State, 138 S.W.3d 643, 649 (Tex. App.-Dallas 2004, no pet.)). Courts also
consider the following factors: (1) the nature of the location at which the accused was
arrested; (2) the quantity of contraband in the accused's possession; (3) the manner of
packaging; (4) the presence or lack thereof of drug paraphernalia (for either sale or use);
(5) the accused's possession of large amounts of cash; and (6) the accused's status as a
drug user. Id. Moreover, "'[i]ntent can be inferred from the acts, words, and conduct of the
accused.'" Id. (quoting Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)).

 2. Analysis

 Here, Mejia was in possession of 4.18 or 4.19 grams of cocaine, a digital scale,
small "plastic baggies," a plastic bottle of Mannitol, two loaded semi-automatic handguns,
and a bag that contained additional ammunition. Officer Torres testified that: (1) 4.18
grams of cocaine was more than a single dosage unit of cocaine; (2) he was unaware of
any legitimate use for the small "plastic baggies"; (3) small "plastic baggies" could be used
to package $20 or $40 amounts of cocaine for individual sale; (4) Mannitol is a dietary
supplement that is often "cut up" and mixed with cocaine before sale; and (5) an intent to
deliver could be inferred from the small "plastic baggies" and scale found on Mejia's
person, as well as the presence of Mannitol in the vehicle. Additionally, Officer Smith
testified that digital scales and Mannitol are typically used in the control and distribution of
controlled substances. Moreover, the jury also heard testimony from three officers at the
Victoria County Jail that Mejia shouted instructions to Vasquez to "take the rap" because
she had no prior felony offenses. Viewing all this evidence in the light most favorable to
the verdict, we conclude that the jury could have found beyond a reasonable doubt that
Mejia intended to deliver the cocaine. See id.; see also Laster 275 S.W.3d at 517.

 Moreover, the only evidence that could undermine the verdict that Mejia possessed
the cocaine with the intent to deliver is the testimony of Perez and Vasquez. However, the
jury was free to discredit this evidence. See Johnson, 23 S.W.3d at 7; Lee, 259 S.W.3d
at 792-93. Thus, after examining all the evidence neutrally, we conclude that the evidence
was not so obviously weak as to undermine confidence in the jury's determination nor was
the contradictory evidence so strong that the standard of proof beyond a reasonable doubt
could not have been met. See Robinson, 174 S.W.3d at 331-32; see also Watson, 204
S.W.3d at 414-15. Because we conclude that the evidence was legally and factually
sufficient to establish that Mejia intended to deliver the cocaine, Mejia's second issue is
overruled. 

D. Deadly Weapon

 In his third issue, Mejia argues that the evidence is legally and factually insufficient
to prove that he used a deadly weapon during the commission of the offense. When a
challenge is made to the legal sufficiency of a deadly weapon finding, the reviewing court
must determine whether the evidence demonstrated that: (1) the object meets the
statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited
during the transaction from which the felony conviction was obtained; and (3) other people
were put in actual danger. Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005)
(en banc). 

 A defendant "'used . . . a deadly weapon' during the commission of the offense" if
the "deadly weapon was employed or utilized in order to achieve its purpose." Patterson
v. State, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989); Sanchez v. State, 243 S.W.3d 57,
72 (Tex. App.-Houston [1st Dist.] 2007, pet. ref'd). A firearm is a deadly weapon per se. 
See Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon Supp. 2009); Ex parte Huskins, 176
S.W.3d 818, 820 (Tex. Crim. App. 2005). Use of a deadly weapon not only includes the
wielding of a firearm, but also extends "to any employment of a deadly weapon, even its
simple possession, if such possession facilitates the associated felony." Patterson, 769
S.W.2d 938, 941 (Tex. Crim. App. 1989) (emphasis in original). 

 In Robinson, law enforcement officers discovered two kilograms of cocaine in a
vehicle in which the defendant was a passenger. Robinson, 174 S.W.3d at 323. After
hearing evidence that the officers discovered a loaded semi-automatic firearm under a shirt
on the floorboard of the vehicle, the jury made an affirmative finding that the defendant
used a firearm in the commission of the offense of possession with intent to deliver. Id. at
323-24. Based on evidence that the gun was loaded and located between the defendant
and the driver, as well as evidence that carrying a loaded weapon was "part and parcel"
of cocaine possession and delivery, the Houston Court of Appeals concluded it was
"unlikely that the presence of both the handgun and the cocaine in the truck was mere
coincidence" and that the evidence was legally and factually sufficient to support the jury's
deadly weapon finding. Id. at 332-33.

 In the present case, Officer Torres found two loaded semi-automatic handguns
under at least one jacket on the floorboard of the backseat of the vehicle driven by Mejia. 
A bullet was found in the chamber of each gun and Officer Torres testified that the guns
would have fired if someone pulled the trigger. Additional ammunition was also located in
a clear plastic bag near the guns. We must address, therefore, whether the firearms
facilitated Mejia's possession and intended delivery of the cocaine. See Patterson, 769
S.W.2d at 941; Robinson, 174 S.W.3d at 332.

 The firearms were loaded and situated between Mejia, who sat in the front seat of
the vehicle, and the cocaine, located inside a makeup bag that sat on the backseat. The
jury heard testimony that: (1) the 4.18 or 4.19 grams of cocaine constituted more than a
single dosage unit; (2) a digital scale with traces of cocaine was found in Mejia's pocket;
(3) small "plastic baggies" that could be used to package $20 or $40 amounts of cocaine
for individual sale were found in Mejia's pocket; and (4) a bottle of Mannitol was found in
the vehicle. Based on this evidence, a rational fact finder could have found beyond a
reasonable doubt that the firearms facilitated Mejia's possession and intended delivery of
the cocaine. See Robinson, 174 S.W.3d at 332-33.

 Moreover, the only contradictory evidence that was presented to the jury was
Vasquez's testimony that she owned the guns and that Mejia was not aware that the guns
were in the vehicle. However, the jury was free to discredit this evidence and infer from
the evidence presented that the guns were present in the vehicle to protect the cocaine. 
See id. Thus, after neutrally examining all the evidence, we conclude that the evidence
was factually sufficient to support the jury's deadly weapon finding. See id. Having
concluded that the evidence was legally and factually sufficient to support the jury's deadly
weapon finding, we overrule Mejia's third issue. 

III. Constitutionality of Sentence

 By his fourth issue, Mejia argues that his sentence of life imprisonment was
disproportionate to the seriousness of the offense and in violation of the Eighth and
Fourteenth Amendments to the United States Constitution. 

A. Applicable Law and Standard of Review

 The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor
excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend.
VIII. The Eighth Amendment is applicable to punishments imposed by state courts through
the Fourteenth Amendment's Due Process Clause. See U.S. Const. amend. XIV,
Robinson v. California, 370 U.S. 660, 667 (1962). The Eighth Amendment does not
require strict proportionality between the crime and the sentence; rather, it forbids extreme
sentences that are "grossly disproportionate" to the crime. Ewing v. California, 538 U.S.
11 (2003). Although the precise contours of the "grossly disproportionate" standard are
unclear, it applies only in "exceedingly rare" and "extreme" cases. See Lockyer v. Andrade,
538 U.S. 63, 73 (2003). Texas courts have traditionally held that, as long as the
punishment assessed is within the range prescribed by the Legislature in a valid statute,
the punishment is not excessive, cruel, or unusual. See Jordan v. State, 495 S.W.2d 949,
952 (Tex. Crim. App. 1973); Trevino v. State, 174 S.W.3d 925, 928 (Tex. App.-Corpus
Christi 2005, pet. ref'd); see also Escochea v. State, 139 S.W.3d 67, 80 (Tex. App.-Corpus
Christi 2004, no pet.).

 Although Mejia's sentence falls within the applicable range of punishment, that does
not end our inquiry. Texas courts recognize that a prohibition against grossly
disproportionate sentences survives under the federal constitution apart from any
consideration whether the punishment assessed is within the statute's punishment range. 
Winchester v. State, 246 S.W.3d 386, 388 (Tex. App.-Amarillo 2008, pet. ref'd); Mullins
v. State, 208 S.W.3d 469, 470 (Tex. App.-Texarkana 2006, no pet.).

 We have recognized that "the viability and mode of application of proportionate
analysis . . . has been questioned since the Supreme Court's decision in Harmelin v.
Michigan, 501 U.S. 957 (1991)." Trevino, 174 S.W.3d at 928 (citing McGruder v. Puckett,
954 F.2d 313, 315-16 (5th Cir.1992)); see Solem v. Helm, 463 U.S. 277, 292 (1983);
Sullivan v. State, 975 S.W.2d 755, 757-58 (Tex. App.-Corpus Christi 1998, no pet.)
(discussing the implications of the Harmelin opinion and reviewing the proportionality of
appellant's sentence under the Solem and McGruder tests). Assuming, arguendo, the
viability of a proportionality review, as we did in Sullivan, we will apply both the Solem and
McGruder tests to the facts of this case. See Sullivan, 975 S.W.2d at 757-58. In both
Solem and McGruder, we look first at the gravity of the offense and the harshness of the
penalty. Solem, 463 U.S. at 290-91; McGruder, 954 F.2d at 316.

B. Analysis

 1. Gravity of the Offense

 As previously discussed, the evidence at trial was sufficient to prove that Mejia
knowingly possessed four grams or more but less than 200 grams of cocaine with the
intent to deliver. Further, the evidence was sufficient to support the jury's deadly weapon
finding. With respect to the deadly weapon finding, the evidence showed that two semi-automatic firearms were located within Mejia's reach. Both guns were loaded and the
barrel of each gun held a bullet. Testimony revealed that the guns would have fired as
soon as the trigger was pulled.

 Moreover, when conducting an Eighth Amendment proportionality analysis, we may
consider the sentence imposed in light of the accused's prior offenses. Winchester, 246
S.W.3d at 390; Culton v. State, 95 S.W.3d 401, 403 (Tex. App.-Houston [1st Dist .] 2002,
pet. ref'd). During the punishment phase, the State presented evidence that Mejia had a
prior felony conviction for aggravated robbery that included an affirmative finding of a
deadly weapon. Mejia also stated that he had committed two additional violent offenses.

 Based on the evidence above evidence, the gravity of the offense indicates that the
punishment was not excessive.

 2. Harshness of the Penalty

 The punishment range for a first-degree felony is imprisonment for life or for any
term not more than 99 years or less than five years. Tex. Penal Code Ann. §12.32
(Vernon Supp. 2009). Thus, the Legislature considers unlawful possession of cocaine
weighing four grams or more but less than 200 grams with the intent to deliver serious
enough to deserve a life sentence. See Tex. Health & Safety Code Ann. § 481.112(a),
(d). In light of the seriousness of the present crime for which Mejia has been convicted,
as well as the evidence presented at the punishment hearing including, inter alia, his prior
felony offense, his admission to committing two other violent offenses, and the jury's
deadly weapon finding, we cannot say that his life sentence is excessive. We therefore
conclude that his punishment is not grossly disproportionate to the offense for which he
was convicted. 

 Moreover, because there is no evidence in the appellate record of the sentences
imposed for other similar crimes in Texas or for the same crimes in other jurisdictions, we
cannot perform a comparative evaluation using the remaining Solem factors. See Solem,
463 U.S. at 292; see also Sullivan, 975 S.W.2d at 757-58. Therefore, we conclude that
Mejia's sentence is neither grossly disproportionate nor cruel and unusual. Accordingly,
Mejia's fourth issue is overruled.

IV. Conclusion

 Having overruled all of Mejia's issues on appeal, we affirm the trial court's judgment.

 ________________________

 ROGELIO VALDEZ

 Chief Justice 

Do not publish. 

Tex. R. App. P. 47.2(b)

Delivered and filed the 

25th day of March, 2010. 
1. On appeal, Mejia does not challenge the lawfulness of the search of either the vehicle or his person.
2. At trial, it was disputed whether one or two jackets were found on the floorboard.
3. Officer Smith later testified that Mannitol is used to "thin [cocaine] out" because Mannitol and cocaine
are approximately the same weight.
4. Vasquez testified that she was unable to purchase a gun from Academy, a sporting goods store,
because her "ID was expired."