LaShannon Demarr **LEE**, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 01–06–00461–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 8, 2007.

Rehearing Overruled Jan. 9, 2008.

Discretionary Review Refused
May 21, 2008.

---

Gregory D. Sherwood, Austin, for appellant.

Kurt Sistrunk, Crim. Dist. Attorney–Galveston, B. Warren Goodson, Jr., Asst. Crim. Dist. Atty., Galveston, for appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, LaShannon Demarr Lee, appeals from a conviction for the murder of Lakendrick Alexander. *See* TEX. PEN.CODE ANN. § 19.02 (Vernon 2003). Appellant pleaded not guilty to the jury. The jury found appellant guilty and, in the punishment phase of trial, sentenced him to 13 years in prison, after finding by a preponderance of the evidence that appellant acted under the immediate influence of sudden passion arising from an adequate cause. *See* TEX. PEN.CODE ANN. § 19.02(d). In his first issue, appellant contends that the trial court erred in its jury charge concerning self-defense by instructing the jury that a person does not act in self-defense if the person is unlawfully carrying a handgun while seeking an explanation from the complainant, because no evidence raised that issue at trial. *See* TEX. PEN.CODE ANN. § 9.31(b)(5)(A) (Vernon 2005). Appellant's remaining two issues

challenge the legal and factual sufficiency of the evidence to support the jury's finding that appellant did not act in self-defense. We conclude the trial court did not err by giving the jury instruction and that legally and factually sufficient evidence supports the verdict. We affirm.

### Background

Appellant met Alexander in appellant's girlfriend's apartment complex in January 2003. The two occasionally met and played video games in appellant's girlfriend's apartment. In February 2003, appellant won some money playing dice at "the slab," an empty building foundation where people gather, but the money was stolen by Alexander. Alexander and two accomplices tied up appellant while he was in his girlfriend's apartment and debated whether to kill appellant. After his release, appellant reported the robbery by Alexander to police.

After the robbery, appellant and his girlfriend began to fear for their lives due to Alexander's conduct. On one occasion, neighbors reported to appellant that Alexander was seen around appellant's apartment, "climbing in and out of windows." On another occasion, a gang member reported to appellant that Alexander would return the money if appellant would drop the criminal charges, but appellant refused to drop the charges. Further, a neighbor reported to appellant that Alexander was under the stairway to appellant's girlfriend's apartment waiting for appellant, accompanied by three gang members who had knocked on the door for appellant to come out. Placed in fear by this conduct, appellant armed himself with a handgun and secured the doors to his girlfriend's apartment by pushing tables against the doors to prevent them from being kicked in.

On the morning of April 17, 2003, the day of the shooting, appellant was at "the slab" again, playing dice, when Robert Earl Sledge, an acquaintance, drove by the slab. Appellant asked for a ride, but did not ask to go to any specific place. Sledge said the two men went to 11th Street and 1st Avenue North because that's "where everybody was hanging at." Appellant claimed not to know that Alexander would be there.

When the pair arrived at 1st Avenue North, Sledge stopped the car for some people playing basketball in the street. Appellant and Sledge saw Alexander standing up, facing toward Sledge's car in the yard of an abandoned house. Both Sledge and appellant said they could not leave the area due to the basketball players in front of their car, though Sledge did not remember if there was another car behind him.

Appellant stated that he got out of the car because he saw Alexander "with his hands under his shirt coming up with his gun" and that Alexander's gun got stuck in his pants. Sledge also saw Alexander reaching, but never saw Alexander pull a weapon because Alexander "didn't have a chance." Appellant shot Alexander three times with a .45 caliber gun.

Other people at the scene of the shooting saw the events differently than appellant and Sledge. Ezekiel Vallery said that while he was playing dice at the vacant house, he saw Alexander selling "wet," which is formaldehyde that "gets you high if you smoke it." Vallery said Alexander was standing in the driveway with his back to the street. Vallery saw appellant get out of a car, pointing a handgun at Alexander. Vallery heard appellant say something like, "You robbed me. You not going to rob me no more." Vallery told Alexander to "look out." Alexander turned, trying to get his gun out of his pants, but it got stuck, and appellant shot him.

Peter Veazy was on the driveway with Alexander, while Ruth Mae Craer–Norman was in a Mustang convertible. After greeting a friend and turning back towards Alexander, Veazy saw appellant with a gun in his hand "running up behind [Alexander]." Veazy said that as Alexander started turning around, appellant started shooting. Veazy did not see Alexander reach for a firearm. However, Veazy acknowledged that Alexander had a gun in his waistband when he was shot because he saw a bystander remove the gun from Alexander's waistline after the shooting.

Craer–Norman saw appellant get out of Sledge's car with a handgun and cock it. She heard appellant say "hey" to Alexander, who turned to face appellant as appellant opened fire. Craer–Norman said Alexander did not have time to pull his gun.

After the shooting, Officer Crow of the Texas City Police Department investigated the scene of the shooting, where he discovered five spent .45 caliber casings in the driveway of the abandoned house near Alexander's body. Two to three days after the shooting, appellant left Galveston County, moving to Baytown before leaving for Fort Worth. Appellant testified that he ran away due to fear of retaliation from gang members, who were on the street, as well as in jail.

### Jury Charge on Self–Defense

■ In his first issue, appellant contends the trial court erred by overruling his objection to the jury charge. Appellant asserts the court improperly instructed the jury on the law of self-defense by including an instruction that told the jury that a defendant does not have a right to self-defense when a defendant unlawfully carries a handgun while seeking a discussion with, or an explanation from, the com-

plainant. Appellant contends that the charge should not have been given because no evidence raised the issue at trial.

■ When reviewing charge errors, an appellate court must first determine whether error actually exists in the charge. *Olivas v. State*, 202 S.W.3d 137, 143–44 (Tex.Crim.App.2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). Only if the court finds error do we proceed to the second step that requires examination of harm resulting from the error. *Olivas*, 202 S.W.3d at 143–44; *Almanza*, 686 S.W.2d at 171.

■ The penal code provides that a person is justified in using deadly force due to a reasonable belief that it was immediately necessary to protect himself from another's use of deadly force, and a reasonable person in his place would not have retreated. *See* Tex. Pen.Code Ann. §§ 9.31(a), 9.32(a) (Vernon 2003). An exception to self-defense applies when the defendant "sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was carrying a weapon in violation of Section 46.02." [1] Tex. Pen.Code Ann. § 9.31(b)(5)(A). A charge limiting a defendant's right to self-defense under this section is properly given when (1) self-defense is an issue; (2) there are facts in evidence that show that the defendant sought an explanation from or discussion with the victim concerning their differences; and (3) the defendant was unlawfully carrying a weapon. *Bumguardner v. State*, 963 S.W.2d 171, 175 (Tex.App.-Waco, 1998, pet.ref'd) (holding that evidence raised issue that Bumguardner sought an explanation from victim because evidence existed that showed

---

1. Section 46.02 of the Texas Penal Code states, "A person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club." Tex. Pen.Code Ann. § 46.02(a) (Vernon 2003).

Bumguardner had differences with victim, demanded to know where his wife was, and yelled at victim while unlawfully carrying weapon, and self-defense was submitted to jury); *see Fink v. State*, 97 S.W.3d 739, 743 (Tex.App.-Austin 2003, pet. ref'd) (holding that trial court did not err by instructing jury on seeking an explanation when evidence showed that Fink went to his apartment after verbal altercation with victim and immediately returned to scene armed with firearm "to see if the guy was coming after [him]"). If there is evidence raising the issue, an instruction should be submitted. *See Bumguardner*, 963 S.W.2d at 175 (citing *Matthews v. State*, 708 S.W.2d 835, 838 (Tex.Crim.App.1986)).

The jury charge instructed the jury on the law of self-defense, stating that a person is justified in using force against another when he reasonably believes the force is immediately necessary to protect himself against another person's use of unlawful force. The charge also stated that if the jury found the defendant acted reasonably, they must find him not guilty and any doubt should be resolved in favor of the defendant. The charge then explained the law of provocation, stating that if the defendant intended to bring on the difficulty with the victim, the jury should find the defendant guilty of murder. The defense did not object to those parts of the charge. The complained of portion of the jury charge states that the jury should find against appellant on the matter of self-defense if it determined beyond a reasonable doubt that deadly force used by appellant against Alexander was at a time when appellant was seeking an explanation from or discussion with Alexander while appellant was unlawfully carrying a handgun.

Appellant describes his encounter with Alexander as a coincidence. According to appellant and Sledge, they became aware of Alexander only after they arrived at the location. Appellant denies any intent for revenge or any desire to question Alexander about the robbery. However, other testimony belies this contention.

According to the State's witnesses, the car appellant was in stopped on the street. Sledge remained in the car. Appellant got out. Appellant, with a gun in his hand, walked down a driveway towards Alexander. Appellant told Alexander, "You robbed me. You not going to rob me no more."[2] Appellant then shot Alexander before Alexander could obtain the weapon that Alexander carried in his waistband.

We conclude that the trial court properly instructed the jury on the law of seeking a discussion or an explanation as a limitation to self-defense. Self-defense was in the jury charge. Appellant was unlawfully carrying a firearm. Appellant had a prior dispute with the deceased, and some evidence existed that appellant was seeking a discussion with Alexander when he shot Alexander. Appellant's walking up and speaking to Alexander about the subject of their disagreement, the robbery and subsequent conduct by the gang members, while carrying an unlawful weapon, was some evidence of appellant's effort to have a discussion with Alexander, raising an issue under section 9.31(b)(5)(A) of the Penal Code. Before the discussion could go any further, some evidence showed that Alexander reached for the weapon in his waistband rather than engaging in the conversation. Because some evidence raised the issue, we hold that the trial court did not err by instructing the jury that it should find against appellant on his claim

2. At another point in his testimony, Mr. Vallery stated that appellant said, "You're not going to rob nobody else."

of self-defense if it found, beyond a reasonable doubt, that deadly force was used by appellant at a time when he was seeking a discussion with Alexander while unlawfully carrying a weapon. *See Fink,* 97 S.W.3d at 743; *Bumguardner,* 963 S.W.2d at 175. We overrule appellant's first issue.

## Legal Sufficiency of the Evidence

■ In his second issue, appellant contends that the evidence is legally insufficient to support his conviction for murder because, viewing the evidence in the light most favorable to the verdict, the State failed to prove appellant did not act in self-defense. Appellant asserts that the evidence was legally insufficient because no evidence showed that Sledge took appellant to look for Alexander, nor that appellant sought revenge. Appellant further notes that, even if believed, the "inconsistent" testimony from Vallery, Veazy, and Craer–Norman "cannot support the prosecution's theory that this homicide occurred while [appellant] was seeking an explanation or discussion."

■ In a legal sufficiency review, we consider the entire trial record to determine whether, viewing the evidence in the light most favorable to the verdict, a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex.Crim.App.2005); *McClesky v. State,* 224 S.W.3d 405, 409 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). In conducting our review of the legal sufficiency of the evidence, we do not reevaluate the weight and credibility of the evidence, but ensure only that the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App. 1993).

■ A defendant has the burden of producing some evidence to support a claim of self-defense. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App.2003). Once the defendant produces that evidence, the State bears the burden of persuasion to disprove the raised defense. *Id.* The burden of persuasion does not require that the State produce evidence; it requires only that the State prove its case beyond a reasonable doubt. *Id.* The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject the defensive issue. *Saxton v. State,* 804 S.W.2d 910, 913–14 (Tex.Crim. App.1991). When reviewing the legal sufficiency of the evidence concerning the jury's rejection of self-defense, we look to whether any rational jury could have found against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton,* 804 S.W.2d at 914; *McClesky,* 224 S.W.3d at 409–10.

Viewing the evidence in a light most favorable to the verdict, the jury could have rationally believed the testimony of Vallery, Veazy, and Craer–Norman, all of whom agreed that Alexander's back was to the street when appellant got out of Sledge's car, approached Alexander with gun drawn, and spoke to him. *See Saxton,* 804 S.W.2d at 914; *Denman v. State,* 193 S.W.3d 129, 133 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) (holding that appellant's testimony of self-defense is not enough to render evidence insufficient). We hold that the evidence is legally sufficient to prove murder because a rational jury could have found against appellant on the self-defense issue beyond a reasonable doubt by disbelieving testimony from appellant and Sledge. *See Saxton,* 804 S.W.2d at 914; *Denman,* 193 S.W.3d at 133; *Collins v. State,* 754 S.W.2d 818, 821 (Tex.App.-Houston [1st Dist] 1988, pet. ref'd). We overrule appellant's second issue.

### Factual Sufficiency of the Evidence

Appellant contends in his third issue that the evidence is factually insufficient to establish that he did not act in self defense. When conducting a factual-sufficiency review, we view all of the evidence in a neutral light. *Ladd v. State,* 3 S.W.3d 547, 557 (Tex.Crim.App.1999). We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). Under the first prong of *Johnson,* we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim.App.2006). Under the second prong of *Johnson,* we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson,* we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In conducting a factual-sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *See Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

A jury is in the best position to evaluate the credibility of witnesses, and we are required to afford "due deference" to the jury's determinations. *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006). The jury is free to accept or to reject any or all of the evidence presented by either side. *See Saxton,* 804 S.W.2d at 914. Reconciling conflicting testimony is within the exclusive province of the jury. *Good-man v. State,* 66 S.W.3d 283, 287 (Tex. Crim.App.2001); *see Cleveland v. State,* 177 S.W.3d 374, 380 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd).

Appellant points to testimony that he and Sledge gave at trial. According to their testimony, Alexander was facing their car, reaching for his gun, when appellant shot him. Appellant did not walk down the driveway to Alexander. Rather, appellant was in the street at the time of the shooting. Sledge and appellant said they could not retreat due to the basketball game in the street. Appellant said he feared for his life due to Alexander's conduct since the robbery charges were filed. Appellant also contends in his brief that the testimony of Vallery, Veazy, and Craer-Norman was inconsistent and biased because they were associates of Alexander.

It is within the jury's province to determine witness credibility. *See Cain,* 958 S.W.2d at 408-09. The jury is free to choose to resolve conflicting testimony in favor of Vallery, Veazy, and Craer-Norman rather than appellant and Sledge regarding the sequence of events. The inconsistencies among Vallery, Veazy, and Craer-Norman related primarily to what appellant said when leaving his car. Their testimony was consistent regarding how appellant, with his gun drawn, approached Alexander. Vallery, Veazy, and Craer-Norman each testified that Alexander was facing away from the street when appellant approached with a gun in hand. The physical evidence, the bullet casings found in the driveway, is consistent with the location of the shooting, as described by Vallery, Veazy, and Craer-Norman. The bullet casings were not found in the street, where appellant claims the shooting occurred, and thus the physical evidence does not support appellant's assertions. As the sole judge of credibility, the jury

could have chosen to believe the testimony of witnesses who relayed facts showing that appellant did not act in response to an immediate threat, but rather approached the situation as the instigator. *See id.* We conclude that the evidence is not so weak that the verdict is clearly wrong and manifestly unjust, and there is no basis in the record for a conclusion that the great weight and preponderance of the evidence contradicts the jury's verdict. *See Watson,* 204 S.W.3d at 417.

We hold the evidence is factually sufficient. We overrule appellant's third issue.

## Conclusion

We affirm.