Opinion issued December 23, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00743-CR

———————————

Candy Hill Hughes, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 230th District Court 

Harris County, Texas



Trial Court Case No. 1169973

 



 

MEMORANDUM OPINION

          A
jury found appellant, Candy Hill Hughes, guilty of the offense of murder.[1]  After finding true the allegations in two
enhancement paragraphs that appellant had been twice previously convicted of
felony offenses, the jury assessed his punishment at confinement for sixty
years.  In two points of error, appellant
contends that the evidence is factually insufficient to support his conviction
and the trial court erred in qualifying the issue of self-defense with an
“explanation or discussion of differences” instruction.[2] 

          We
affirm.

Background

          Houston
Police Department (“HPD”) Officer B. Evans testified that shortly after
midnight on June 5, 2008, he was dispatched to a neighborhood to investigate a
possible homicide.  Upon his arrival at
the scene, he learned that emergency services personnel had taken the
complainant, Michael Scott, to Ben Taub Hospital to be treated for gunshot injuries.
 While “canvassing” the scene, Evans
spoke with Dean Marcus Seedanee and Didrick Dickson, who told Evans that they
saw appellant shoot the complainant with a handgun.  

          After
Officer Evans’s initial investigation, he gave his information to HPD Officer B.
Shorten, who testified that she developed a photographic lineup that included a
photograph of appellant and five other men. 
When she presented the photographic lineup to Dickson and Seedanee, they
both identified appellant as the man that they saw shoot the complainant.  

Harris County Medical Examiner
Albert Chu, who performed an autopsy on the complainant’s body, testified that
the complainant suffered from a “gunshot entrance wound” on the “right side of
his back” and an “exit wound” “above his left shoulder . . . next to
his neck” which was a “life-threatening injury.”  Chu also observed a “gunshot entrance” and
“exit wound” on the complainant’s “left arm.”  He noted that the complainant had a .31 blood
alcohol content at the time of death.  Chu
opined that the complainant’s “cause of death was gunshot wound of the torso
and left arm” and that the “manner of death” was “homicide.” 

Dickson testified that on June 5,
2008, he was “hanging out” with Seedanee outside of his grandmother’s house and
they decided to walk down the street to “Simon’s house.”  Dickson noted that the complainant was present
on the street along with a few other neighbors and their friends.  He explained that he, Seedanee, and the
complainant had grown up together and were “just like brothers.”  Dickson observed a conversation between the
complainant and Wesley Brown, the son of Michelle Batiste, the appellant’s
girlfriend.  Brown then approached Dickson
about the conversation and it appeared to Dickson that Brown “didn’t like what [the
complainant had] said.”  Brown told
Dickson that “[the complainant] said something, he be tripping.” 

After his conversation with Brown, Dickson
followed Seedanee back to his grandmother’s house, where Dickson sat in a chair
in front of his car, and Seedanee sat on the front of the car.  After approximately ten minutes, the
complainant joined them and stood in the street close to Seedanee.  Shortly thereafter, Brown approached the
group “from the passenger side of the car” and “stood silently.”  Dickson then saw appellant “coming down the
street with his dog,” and when appellant walked past the car, Dickson saw that
he had his firearm “drawn.”  Appellant
told the complainant “I’m tired of your shit,” and he then “shot one time” in
the direction of the complainant.  After
appellant fired the gun, Dickson “ran from his chair” and “through the yard.”  He heard appellant order Brown to “get the
dog” and ask Dickson and Seedanee if “y’all want some of this, too?”  Dickson explained that he did not hear anyone
threaten appellant, the complainant did not have any time to react to
appellant’s statement, and he did not see the complainant with a firearm.  

After appellant left the scene, Dickson,
Seedanee, and “Ms. Pat” went to the complainant, who was “laying on the side of
the car,” and Dickson could hear the complainant “gurgling his blood.”  Less than a minute later, appellant drove his
car down the street.  He stopped his car
at the scene, got out of the car, looked around the ground near the complainant,
and then got back in his car and left the scene. 

Seedanee testified that on June 5,
2008, he was present and witnessed the shooting.  Although his testimony is consistent with
that of Dickson, Seedanee did not see the complainant and Brown engage in
conversation.  He noted that after he and
Dickson sat down in front of the home of Dickson’s grandmother, the complainant
joined them.  “[R]ight after” Brown then approached
the group, appellant “walked up . . . with his dog.”  Appellant raised a firearm, told the complainant
“I’m tired of your shit,” and he fired shots “right toward” the complainant.  When appellant “raised” the firearm, it was
“in front of [Seedanee’s] face,” so he “rolled off the car” and ran down the
driveway.  Seedanee explained that the
complainant did not say anything, and did not have any time to react to
appellant.  Also, Seedanee did not see
the complainant with a firearm.  After
appellant left the scene, Seedanee returned with Dickson and “Ms. Pat” to the
complainant, who was on the ground and bleeding.  Shortly after, appellant “pulled up” in his
car, got out of the car, walked over the complainant’s body, and then “jumped
back in his car and screeched out.” 

Appellant testified that on “seven
or eight” previous occasions, he had come across the complainant who was armed with
a “gun or pistol,” and the complainant was usually “drunk.”  He noted that when the complainant started
drinking, he “wanted to wave all his guns.”  Appellant explained that he and the
complainant “had [had] several arguments” in which the complainant “pulled his
gun a few times.”  On June 5, 2008, as he
was walking his dog, appellant saw Brown and the complainant “exchanging
words.”  He then called Brown over
towards him, and Brown told him “what was going on.”  Appellant explained that this was the only
time that he discussed with Brown the conversation that Brown had had with the
complainant and that Brown had not returned home prior to appellant’s walk.  After speaking with Brown, appellant then “asked
[the complainant] if he had anything that he was having a problem with[,] with [Brown]
to refer to [appellant] or Michelle.”  The
complainant, who was “very” intoxicated, told appellant that “he didn’t have to
tell me anything,” “got kind of belligerent,” and began “cursing and
things.”  The complainant then “started
jumping around and reaching under his shirt.”  Based on his prior experiences with the
complainant, appellant believed that the complainant was going to shoot him, and,
after the complainant “reached under his shirt,” appellant “pulled [his] gun
and [] shot him.”  Appellant admitted to
unlawfully carrying a firearm, but explained that he was carrying it because he
was “new to the neighborhood” and “a lot of things happen in this world today,”
so he was “just trying to protect” himself.  After appellant “fired three shots,” he
“walked away,” got into his car, and drove away.  He noted that he stopped his car to speak to
Fuquawanda, Michelle Batista’s daughter, but denied that he stopped to look at
the complainant’s body.  Appellant then
left town for two months because he did not think that he “would stand a
chance” if he contacted the police.  

On cross-examination, appellant
admitted that he had given to Officer Shorten a prior statement in which he
explained the shooting.  In his
statement, appellant noted that Brown came to his house after the initial
argument with the complainant.  Appellant
and Brown had a “conversation,” and during the conversation, the complainant
came into appellant’s yard “waving a gun.”  After the complainant left appellant’s yard
and appellant and Brown continued their conversation, appellant retrieved his
firearm and walked down the street to where the complainant, Dickson, and
Seedanee were located in order to discuss some issues.  He wanted to speak to the complainant because
he was “upset” and was “having differences” with the complainant about
Brown.  Appellant then “spoke back and
forth” with the complainant and told him that he was “tired” shortly before
shooting the complainant.  

Michelle Batiste testified that the
complainant often brandished firearms and was often intoxicated.  She noted that appellant and the complainant
had prior altercations.  On one occasion,
the complainant “lifted his shirt up and showed that he had a pistol” and said,
“You don’t want to fuck with me.”  She explained
that the complainant had a reputation for “packing a gun.” 

HPD Officer J. Marcus testified
that prior to the shooting, on July 10, 2006, he had been dispatched to a
“shooting in progress.”  When he arrived
on the scene, he saw the complainant with an A-K 47 rifle standing in the
middle of the roadway. 

Fuquawanda, Michelle Batiste’s
daughter, testified that the complainant was intoxicated every day and that he
had a reputation for carrying a firearm every day.

Factual Sufficiency

          In
his first point of error, appellant argues that the evidence is factually
insufficient to support his conviction because the evidence that he acted in
self-defense “was so strong that the jury’s rejection of the defense was
contrary to the great weight and preponderance of the evidence.”  

We now review the factual
sufficiency of the evidence under the same appellate standard of review as that
for legal sufficiency.  Ervin v. State, No. 01-10-00054-CR, 2010 WL
4619329, at *2–4 (Tex. App.—Houston [1st Dist.] November 10, 2010, no pet. h.)
(citing Brooks v. State, 323 S.W.3d
893, 912, 925–26 (Tex.
Crim. App. 2010)) (holding Jackson v.
Virginia standard “is the only standard that a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt”).  Under this standard, we are to
examine “the evidence in the light most favorable to the prosecution” and
determine whether “a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.”  Jackson
v. Virginia, 442 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979).  Evidence is insufficient when the “only
proper verdict” is acquittal.  Tibbs v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218
(1982).  

When a defendant asserts a claim of self-defense, the State
has the ultimate burden of persuasion.[3]
 Zuliani
v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2007).  The burden of persuasion does not require the
production of evidence; it requires only that the State prove its case beyond a
reasonable doubt.  Id. at 594.  When a jury
finds a defendant guilty, there is an implicit finding against the defensive
theory.  Id.  When reviewing the
sufficiency of the evidence concerning the jury’s rejection of self-defense, we
look to whether any rational jury could have found against the defendant on the
self-defense issue beyond a reasonable doubt. 
Saxton v. State, 804 S.W.2d
910, 914 (Tex. Crim. App. 1991); Lee v.
State, 259 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2007, pet. ref’d).  Accordingly, we now review the factual
sufficiency of the evidence of a rejection of a self-defense claim under the Jackson v. Virginia standard.  See
Ervin, 2010 WL 4619329, at *2.

A person commits the offense of murder if he intentionally
or knowingly causes the death of an individual or intends to cause serious
bodily injury and commits an act clearly dangerous to human life.  Tex. Penal
Code Ann. § 19.02(b)(1),
(2) (Vernon 2003).  However, one may use
force against another when and to the degree he reasonably believes the force
is immediately necessary to protect himself against the other’s use or
attempted use of unlawful force.  Id. § 9.31 (Vernon Supp. 2010).  This includes using deadly force against the
other if a reasonable person in the actor’s situation would not have retreated and
when and to the degree that “he reasonably believes” the deadly force is
immediately necessary to protect himself against the other’s use or attempted
use of unlawful deadly force.  Id. § 9.32(a).

In support of his factual
sufficiency challenge, appellant emphasizes the evidence contrary to the
verdict.  He notes that “there was
testimony from numerous witnesses that [the complainant] often engaged in
threatening displays of weapons when he was irritated or displeased with
someone.”  He asserts that the
complainant was often intoxicated “and this led to his brandishing of
weapons.”  Appellant points to the fact
that the complainant had a .31 blood alcohol content at the time of his death
and asserts that this evidence “buttressed his claim” that he was acting in
self-defense.  Appellant did testify that
at the time he approached the complainant, he was “jumping around” and appeared
to lift his shirt, as if he was going to pull out a firearm.  Appellant believed that the complainant was
going to shoot him, and he, in fear of his life and safety, pulled out his
firearm and shot the complainant. 
Appellant then walked home, got into his car, and drove away.  

However, we are now only to examine
“the evidence in the light most favorable to the prosecution.”  Ervin,
2010 WL 4619329, at * 2.  Here, Dickson
and Seedanee testified that earlier in the evening, Brown and the complainant
had exchanged words.  Later, when
appellant approached the complainant, he stated, “I’m tired of your shit” and
then shot the complainant.  They
explained that the complainant did not have time to react to appellant, and
they did not see the complainant in possession of a firearm.  After the shooting, appellant drove his car
to the scene of the shooting, got out, looked over the complainant’s body, and
then drove away.  

The issue of self-defense is a fact
issue to be determined by the jury, which is free to accept or reject the
defensive issue.  Saxton, 804 S.W.2d at 913–14; Lee, 259 S.W.3d at
791.  The fact finder is the sole judge of the weight and
credibility of the evidence.  Brown v.
State, 270 S.W.3d 564, 568
(Tex. Crim. App. 2008).  Therefore, the
jury could have chosen to believe the testimony of Dickson and Seedanee who
testified as to facts showing that appellant did not act in response to an
immediate threat, but rather approached the situation with the intent to shoot
the complainant.  See id. 

Moreover, the jury could have
reasonably believed that appellant, while seeking an explanation from or a
discussion with the complainant concerning their differences, was unlawfully
carrying a weapon.  See Tex.
Penal Code Ann. § 9.31(b)(5)(9).  The State presented evidence that appellant
had previously told Officer Shorten that after he had seen Brown and the
complainant having a conversation, he retrieved his firearm and he approached
the complainant because he was “upset” and was “having differences” with him
concerning Brown.  When he confronted the
complainant, he was unlawfully in possession of a firearm.  See
Id. § 46.02 (Vernon Supp. 2010). 

After reviewing all of the evidence
in the light most favorable to the prosecution, a rational trier of fact could
have found the essential elements of the offense of murder beyond a reasonable
doubt.  See Ervin, 2010 WL 4619329, at *2. 
Accordingly, we hold that the evidence is sufficient to support the
jury’s finding of guilt and rejection of appellant’s claim of self-defense. 

We overrule appellant’s first point
of error. 

Self-Defense Jury Charge

In his second point of error,
appellant argues that the trial court erred in qualifying the issue of
self-defense by instructing the jury that his use of deadly force against the
complainant was not justified if he sought an explanation from or a discussion with
the complainant while unlawfully carrying a weapon because there is no evidence
that appellant sought out the complainant for such an explanation or discussion.
 

          In
analyzing this issue, we must first decide whether jury charge error exists.  Middleton
v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).  If error exists, reversal is required only
when a defendant has properly objected to the charge and there was “some harm” suffered
by the defendant, that is, “the error appearing from the record was calculated
to injure the rights of defendant.”  Tex. Code Crim. Proc. Ann. art. 36.19
(Vernon 2009); Abdnor v. State, 871
S.W.2d 726, 731–32 (Tex.
Crim. App. 1994).  

          The
trial court instructed the jury in pertinent part, 

You are further instructed
as part of the law of this case, and as a qualification of the law on
self-defense, that the use of force by a defendant against another is not
justified if the defendant sought an explanation from or discussion with the
other person concerning the defendant’s differences with the other person while
the defendant was carrying a weapon in violation of the law.

 

Appellant objected to this portion of the charge on
the ground that there is not “enough evidence in the record to support that
limitation on his right of self-defense.”  The trial court overruled the objection.  

          As noted
above, “[t]he use of force against another is not justified . . . if the actor
sought an explanation from or discussion with the other person concerning the
actor’s differences with the other person while the actor was [] carrying a
weapon in violation of [Texas Penal Code section] 46.02.”[4]  Tex.
Penal Code Ann. § 9.31(b)(5)(a).  Such a
limiting instruction on the right to self-defense is proper when (1)
self-defense is an issue, (2) there is evidence that the defendant sought an
explanation from or discussion with the victim concerning their differences,
and (3) the defendant was unlawfully carrying a handgun.  See Lee, 259 S.W.3d at 789–90 (holding that trial court did not
err in instructing jury on defendant’s seeking discussion with victim when defendant
approached victim and, stated, “You robbed me. 
You not going to rob me no more,” before shooting victim); Bumguardner v. State, 963 S.W.2d 171,
175 (Tex. App.—Waco
1998, pet. ref’d) (holding that evidence raised issue that defendant sought
explanation from victim where issue of self-defense was submitted to jury and
State proved that defendant had differences with victim, demanded to know location
of his wife, and yelled at victim while unlawfully carrying weapon); see also Hernandez v. State, 309 S.W.3d
661, 664–65
(Tex. App.—Houston
[14th Dist.] 2010, pet. ref’d) (applying subsection 9.31(b)(5) limiting
instruction where defendant sought out victim to discuss victim’s differences
with third person).  If there is evidence
raising the issue, the charge should include an instruction on an “explanation from
or discussion of differences.”  Lee, 259 S.W.3d at 790. 

Here, appellant testified that when
he was walking his dog, he saw an argument between the complainant and
Brown.  Appellant then approached the
complainant about the situation and advised him that he should direct his
concerns to appellant or Batiste.  Although
appellant testified that he thought the complainant was going to shoot him, he admitted
that he was unlawfully carrying a handgun when he approached the complainant.  Moreover, he admitted that he previously told
Officer Shorten that after he had seen Brown and the complainant having a
discussion, he retrieved his firearm and he approached the complainant because
he was “upset” and “having differences” with him concerning Brown.  

Dickson testified that appellant
approached the complainant after a confrontation arose between the complainant
and Brown.  Dickson and Seedanee both testified
that appellant approached the complainant, stated, “I’m tired of your shit,” and
then shot the complainant. 

Appellant’s testimony that he approached
the complainant and advised him to come to him or Batiste if he had a problem
with Brown, his prior statement to Officer Shorten, and the witness testimony about
appellant’s remarks made to the complainant before the shooting constitute
evidence that appellant sought an explanation from or a discussion with the
complainant about their differences.  Further,
appellant admitted that he was unlawfully carrying a firearm at the time he approached
the complainant.  

Accordingly, we hold that the trial
court did not err in qualifying the issue of self-defense with an “explanation
from or discussion of differences” instruction pursuant to section
9.31(b)(5)(a).  

          We
overrule appellant’s second point of error. 


Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Higley.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 19.02
(Vernon 2003). 

 





[2]           See
Tex. Penal Code Ann. § 9.31(b)(5)
(Vernon Supp. 2010).





[3]           Self-defense
is classified as a “defense,” as opposed to an “affirmative defense.”  Zuliani
v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2007).  Therefore, the defendant bears the burden of
production, which requires that the defendant produce some evidence that
supports the defense.  Id. 
Once the defendant produces that evidence, the State then bears the
burden of persuasion to disprove the raised defense.  Id.  





[4]
          Texas Penal Code section 46.02
provides, “A person commits an offense if he intentionally, knowingly, or
recklessly carries on or about his person a handgun, illegal knife, or
club.”  Tex.
Penal Code Ann. § 46.02(a) (Vernon Supp. 2010).