NO. 07-11-00081-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 31, 2012

RODERICK LEE THOMAS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE CRIMINAL DISTRICT COURT NO. 7 OF DALLAS COUNTY;

NO. F09-60588-Y; HONORABLE MICHAEL R. SNIPES, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Roderick Lee Thomas, appeals his conviction for murder[1] and the jury's assessment of his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for a period of 75 years. Appellant appeals his conviction through four issues contending that the trial court erred in: 1) denying his request for an instruction on the lesser-included offense of manslaughter; 2) granting a limiting instruction on the issue of self-defense; 3) overruling his objection to the trial court's comment on the evidence; and 4) denying his motion for mistrial based

---

[1] See TEX. PENAL CODE ANN. § 19.02(b)(1) - (2) (West 2011).

upon the trial court's comment on the evidence. We disagree with appellant and will affirm.

## Factual and Procedural Background

Late in the evening of October 23rd or the early morning hours of October 24th 2009, Brandon Bush was shot in the back of the head while in a parking lot across the street from a small club that had been hosting a private party. The shooting of Bush was the culminating event in a fight that began in the club, continued outside the club, and eventually resulted in this shooting. The specifics of the events leading up to the fight and of the fight itself were subject to differing testimony; however, the essentials of the events are as set forth below.

The testimony reveals that a party had been arranged as memorial to a young man who had been murdered a year or two earlier. Upwards of 60 or more people were attending this party. The party was held at a place known as the "Club Exclusive" on the corner of Peak and Haskell in South Dallas. The deceased and his two brothers, Darren and Larry, had been at the party only a few minutes when a problem arose. According to the testimony at trial, a line of dancers bumped into appellant, and this lead to a verbal confrontation involving appellant and his friends and the deceased and his friends. Appellant and the deceased squared off to fight and punches were thrown. Once this fight began, a general melee developed. According to testifying witnesses, everyone was fighting, and chairs, drinks, and cue balls from the pool tables were being thrown. Everyone attending the party was thrown out of the club.

Once the fight participants went outside, the fight erupted again. As on the inside of the club, appellant squared off with the decedent. Again, punches were thrown until the deceased attempted to break off the fight. At about this time, some of the testimony indicated, someone fired a shot into the air, and all the fighting stopped. The deceased and his two brothers walked across the street toward their car. At that time, witnesses testified that appellant appeared to be walking toward the deceased with a gun and fired at least two shots at, or in the direction of, the deceased. The deceased fell behind a car. Upon seeing the deceased down on the ground, someone in the crowd called 911. The testimony from the medical examiner reflected that the deceased died from a single gunshot wound behind and above his right ear.

Appellant was subsequently identified as the shooter and was arrested some two months later. An indictment was returned against appellant that contained two paragraphs which alleged appellant had committed the offense of murder by:

> Unlawfully then and there intentionally and knowingly cause the death of BRANDON BUSH, an individual, hereinafter called deceased, by SHOOTING THE DECEASED WITH A FIREARM, a deadly weapon,

> And further did unlawfully then and there intend to cause serious bodily injury to Brandon Bush and did then and there commit an act clearly dangerous to human life, to-wit: SHOOTING THE DECEASED WITH A FIREARM, a deadly weapon, and did thereby cause the death of BRANDON BUSH, an individual.

During the presentation of the State's case in chief, two different witnesses testified that they heard appellant make a threat at the deceased or the deceased and his friends. Chrishaya Daughtry, deceased's girlfriend, testified that, after the fight in the parking lot stopped, she overheard appellant say, "I'm gonna kill one of you niggas

3

tonight." She then saw appellant pull a gun out and start shooting at the deceased. Daughtry testified that she took her shoe off and threw it at appellant who then grabbed her by the neck and said, "I'll kill you too." Sharorie "Rorie" Jones also testified that, after the deceased walked away from the fight, appellant was heard to say "I'm gonna kill one of these niggas."

During the trial, through cross-examination of several of the State's witnesses, appellant sought to introduce testimony that there were discussions among the deceased and his friends of getting a "Mac 90" and "airing the place out." It is appellant's position that this meant that the deceased and his friends were going to acquire an automatic weapon and fire upon appellant and his friends. Additionally, appellant's trial counsel sought to show that several different individuals were armed at the party.

During the charge conference at the conclusion of the testimony, the trial court refused a request to submit a lesser-included charge on manslaughter. However, the trial court did grant appellant's request to submit the issue of self-defense. After the trial court ruled to grant the self-defense issue, the State proposed a limiting instruction on the self-defense charge, and the trial court granted that request.

After the conclusion of the testimony, the jury was charged on both methods of commission of the offense of murder, as set forth in the indictment, along with the issue of self-defense and limitation of the self-defense issue. The jury returned a verdict of guilty and, after the punishment portion of the trial, sentenced appellant to 75 years confinement in the ID-TDCJ. Appellant subsequently perfected his appeal. Appellant's

4

issues involve the denial of the request for a lesser-included offense charge, the limitation on the self-defense charge, the allegation that the trial court commented on the evidence, and then the denial of a mistrial after the comment. We affirm.

## Lesser-Included Charge

Appellant's initial complaint is that the trial court committed reversible error by refusing his request to charge the jury on the lesser-included offense of manslaughter. Initially, we observe that both sides agree that manslaughter is a lesser-included offense of murder. See Schroder v. State, 123 S.W.3d 398, 400 (Tex.Crim.App. 2003). The issue is whether some evidence exists in this record that would permit a jury rationally to find that, if the appellant is guilty, he is guilty only of the lesser offense. See Nevarez v. State, 270 S.W.3d 691, 693 (Tex.App.—Amarillo 2008, no pet.).

The critical issue is on the element of intent. As indicted, the State needed to prove that appellant acted intentionally and knowingly in causing the death of the decedent, according to the first paragraph, or that he intended to cause serious bodily injury to the decedent, according to the second paragraph. See TEX. PENAL CODE ANN. §19.02(b)(1) - (2).[2] Manslaughter would require proof that appellant recklessly caused the death of the decedent. See § 19.04 (West 2011). The pivotal question becomes whether the record before us provides more than a scintilla of evidence that, if appellant is guilty, he is guilty only of manslaughter, that is, recklessly causing the death of the deceased. See Andrews v. State, No. 05-04-00483-CR, 2005 Tex. App. LEXIS 8367, at

---

[2] Further reference to the Texas Penal Code will be by reference to "sec. ___" or "§ ___."

*11 (Tex.App.—Dallas Oct. 11, 2005, no pet.) (mem. op., not designated for publication) (citing Schroder, 123 S.W.3d at 400). According to section 6.03(c) of the Penal Code, "a person acts recklessly, or is reckless, with respect to . . . the unjustifiable risk that the result will occur." See Schroder, 123 S.W.3d at 400.

We must take into consideration that the use of an instrument defined as a deadly weapon *per se* may show, in and of itself, that there is intent to commit murder. See Womble v. State, 618 S.W.2d 59, 64 (Tex.Crim.App. 1981). A firearm is a deadly weapon *per se.* See § 1.07(a)(17)(A) (West Supp. 2011).

We review the record before us to ascertain whether there exists some evidence that appellant was reckless in causing the death of the decedent, but did not act intentionally or knowingly. Nevarez, 270 S.W.3d at 694. Our review of the record reveals testimony from several witnesses that appellant and the deceased had stopped fighting. The deceased was walking away toward his vehicle. Appellant either went to the vehicle of a friend and retrieved the gun or, as some testimony suggests, snatched the gun away from the friend who had already retrieved it. The testimony then reveals appellant proceeded directly toward the deceased with the gun held in front of him and fired at least two times at the deceased. Also indicative of appellant's intent is the testimony of two different witnesses that, after the fight was over, appellant had uttered threats to kill the deceased and his friends.

From this review of the record, we find no evidence which would support the second prong of the test used to determine whether the lesser-included offense of manslaughter should have been given by the trial court. There is simply no evidence

that appellant was guilty of only recklessly causing the death of the decedent. See Adanandus v. State, 866 S.W.2d 210, 232 (Tex.Crim.App. 1993). Accordingly, we overrule appellant's first issue.

Limiting Instruction on Self-Defense

By his second issue, appellant contends that the trial court committed reversible error when it issued a limiting instruction regarding the issue of self-defense. The operative facts in the record are that, at the conclusion of the testimonial potion of the trial, the appellant's trial counsel requested a jury instruction on the issue of self-defense. The trial court indicated that it was going to give such an instruction to the jury, whereupon the State requested a limiting instruction pursuant to section 9.31(b)(5) of the Texas Penal Code. See § 9.31(b)(5) (West 2011). Appellant's trial counsel objected to the inclusion of the paragraph limiting the self-defense charge.

Our review of alleged jury charge error is under the standards set forth in the Texas Code of Criminal Procedure and interpreted in Almanza v. State. TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006)[3]; Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985). First, we must ascertain whether the charge given over appellant's objection was in error. Almanza, 686 S.W.2d at 177. If error is present, we must then determine whether the error is one that is "calculated to injure the rights of the defendant." Id. "Calculated to injure the rights of the defendant" has been interpreted to mean reversal is required upon a showing of some harm. See Salas v.

---

[3] Further reference to the Texas Code of Criminal Procedure will be by reference to "Article ___" or "art. ____."

7

<u>State</u>, No. 05-03-01697-CR, 2005 Tex. App. LEXIS 5376, at *4 (Tex.App.—Dallas July 12, 2005, pet. ref'd) (not designated for publication) (citing <u>Arline v. State</u>, 721 S.W.2d 348, 351 (Tex.Crim.App. 1986)).

The objected-to portion of the charge concerning section 9.31(b)(5) provides as follows:

> (b) The use of force against another is not justified:
>
>> (5) if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was:
>>
>> (A) carrying a weapon in violation of Section 46.02.[4]

The case law interpreting this limitation on the self-defense charge is uniform in one regard. The defendant against whom the limitation operates must be either seeking a discussion with or an explanation from the other party while unlawfully carrying a weapon. <u>See</u> <u>Salas</u>, 2005 Tex. App. LEXIS 5376, at *4; <u>see also Lee v. State</u>, 259 S.W.3d 785, 789 (Tex.App.—Houston [1st Dist.] 2007, pet. ref'd); <u>Fink v. State</u>, 97 S.W.3d 739, 743 (Tex.App—Austin 2003, pet ref'd).

The testimony at trial revealed that, prior to the fight breaking out inside the club, appellant and the deceased had words regarding someone bumping into appellant during a dance. The fight then broke out, which, in turn, led to everyone being thrown out of the club. The fight then broke out again outside the club. The decedent and appellant had ceased fighting, and the deceased was headed to his car when appellant appeared walking toward him firing a gun. From these facts, the State concluded that

---

[4] Section 46.02 of the Texas Penal Code is the "Unlawfully Carrying Weapons" statute.

the limitation on self defense was warranted. The problem with the State's position is that it disregards the language of the statute. Section 9.31(b)(5) requires the actor to seek an explanation or discussion with the other person "*while* the actor" was carrying a weapon in violation of section 46.02. There is no evidence to support the proposition that the appellant was armed when the verbal confrontation took place inside the club, and there is no evidence that appellant and the deceased had any discussion outside the club before the fight started again. Likewise, after the fight stopped, the only action appellant took was to procure a gun and walk toward the deceased while firing at least two shots. From these facts, we see that the element of the limitation that is missing is seeking the discussion or explanation while armed. Accordingly, the trial court erred in giving the limiting instruction as the same is not supported by the evidence. See Lee, 259 S.W.3d at 790.

However, a finding of error in giving the charge at issue does not end our inquiry. We must now determine whether the giving of the charge requires the judgment of the trial court to be reversed. Because the subject of the error was preserved by proper objection, we must ascertain whether some harm flowed to appellant as a result of the improper inclusion of the limitation on self-defense. See Trevino v. State, 100 S.W.3d 232, 242 (Tex.Crim.App. 2003). In making a determination as to harm, the actual degree of harm must be measured against the entire charge and the totality of the evidence on the contested issues to include the weight of the evidence on each of those contested issues. See Almanza, 686 S.W.2d at 171.

9

The case before the Court boiled down to a contest on the issue of self-defense; however, the record reveals only a limited amount of evidence that would support the issuance of the self-defense instruction. Two witnesses testified that they thought the deceased or his friends made allegations that they were going to get a "Mac 90" and "air the place out." Yet, when pressed on who else had guns at the scene of the shooting, no witness was able to identify another person who had a gun at the scene. The police never found any other weapons at the scene. Nor did they find evidence that any other weapons had been fired, such as spent casings from other weapons. There were a number of witnesses that testified that, after appellant stopped fighting with the deceased, the next thing they saw was appellant walking toward the deceased with a gun in his hand.

Appellant points to the following portion of the State's opening during final arguments to show that appellant was harmed:

> So what that says folks, is that it's illegal to carry a handgun around. So if you believe that the defendant went to try to confront the victim with that gun on his person, and he's not in his house or somebody else's house, then he's not entitled to self-defense, and you don't even consider it.

However, this sentence was not spoken in a vacuum. Immediately before entering into the discussion of the limitation on self-defense, the State's attorney had gone through all of the paragraphs that dealt with the issue of self-defense. All in all, the court's charge contained four pages of instruction on the issue of self-defense. Concluding with an application paragraph requiring the jury to find that appellant was seeking an explanation from the deceased at the time he was carrying a firearm in order to find against appellant on the issue of self-defense. Likewise, there was an application

charge on the basic self-defense issue before the limitation charge. The State's attorney spent less than one page of her final argument on the paragraph in question. More of the argument was spent on explaining the two separate manner and means by which appellant could have committed the offense of murder under the indictment. During the closing of the State's final argument, the State's attorney never returned to the subject of the limitation on the issue of self-defense. Rather, the State's attorney concentrated on the evidence that negated the entire theory of self-defense, such as the evidence demonstrating that it was not reasonable that appellant contended he felt threatened. Our review of this entire record leads us to conclude that there was no actual harm suffered by appellant as a result of the erroneous limitation of the self-defense issue. See Almanza, 686 S.W.2d at 171. Accordingly, appellant's second issue is overruled.

Comment on the Evidence and Denial of Motion for Mistrial

Appellant's third and fourth issues deal with an alleged comment on the evidence by the trial court and the trial court's resulting ruling on a motion for mistrial. The record reflects that, during the testimony of Danny Campbell, one of the State's witnesses, the following exchange between the witness and the court took place:

> **Witness:** But – so me and Roderick had got to an altercation at this time because he thinking that I'm gonna let – I'm gonna put ourselves in danger. That's what he think.
>
> **Court:** Whoa, Whoa, Whoa, Whoa. You and Roderick had gotten into it?
>
> **Witness:** Yes, sir.
>
> **Court:** Because he thought you were going to cause an altercation?

11

**Witness:** Nah, he thought like – I get – no, he thought I was gonna let them homeboys hurt us, like hurt us really. 'Cause remember at the time I had – I had got the gun out the car. So he thinking like, like what you – like what you doing? Like, you tripping, you know what I'm saying? They talking about –

**Court:** He essentially thought you were betraying him, is that it?

**Witness:** I don't – I don't wanna say betrayin' 'em.

At this juncture, trial counsel stated, "Your Honor, I'm gonna – I'm gonna object, I think – I don't understand what he's talking about. Well, Your Honor – it's like –." The trial court then inquired, "What are you objecting to?" Trial counsel responded stating he was objecting to the trial court's comment on the testimony. The trial court overruled the objection. Later that day, after the completion of Campbell's testimony, trial counsel moved for a mistrial based upon appellant's perception that the trial court made a comment on the evidence during Campbell's testimony. The trial court overruled the motion.

Appellant's contention is centered on the proposition that the trial court is to refrain from making any remark calculated to convey to the jury its opinion of the case. See art. 38.05 (West 1979). Under appellant's theory, the discussion by the trial court with the witness that is highlighted above, violated the proscription of art. 38.05 because it was "reasonably calculated to benefit the State or prejudice the [appellant]'s rights." See Davis v. State, 651 S.W.2d 787, 789 (Tex.Crim.App. 1983).

In reviewing the record regarding the testimony of Campbell, the following observations are cogent to our decision. First, as pointed out by the State, Campbell's testimony was apparently difficult to understand because, on numerous occasions,

12

either the trial court or the court reporter had to request that Campbell repeat or explain what he had just said. This conclusion is also supported by trial counsel's initial statement to the court when he objected to the trial court's actions. Trial counsel's statement, after saying he thought he was going to object, was that, "I think—I don't understand what he is talking about." Campbell used street jargon throughout his testimony that required explanation. At one point prior to the incident in question, the trial court instructed Campbell to sit up in the witness chair and speak clearly without mumbling.

A review of Campbell's testimony reveals he was trying to relate the possible fear the appellant felt as a result of the comments made by the deceased's friends about "airing the place out." That Campbell was at least partially successful in this endeavor is reflected by the fact that the trial court granted the instruction on self-defense.

Appellant's claim is that the trial court's statements were in fact comments to the jury that the witness was not believable. We arrive at that conclusion by reviewing appellant's brief where he claims the harm was due to the fact that this witness's credibility was crucial to appellant's contention that he fired in self-defense. Our review of the record reveals that, rather than indicating the witness was not believable, the trial court's questions were designed to clarify what the witness was saying. At worst, the trial court was using its authority to try to satisfy the mandates of Rule 611 of the Texas Rules of Evidence. See TEX. R. EVID. 611(a).[5] More specifically, we view the actions of

---

[5] Texas Rule of Evidence 611(a) provides:

13

the trial court as making the interrogation of the witness more effective and avoiding needless consumption of time. Id. When placed in context, the action of the trial court in this matter did not convey to the jury his opinion of the case or any fact issue raised by the evidence. See Bachus v. State, 803 S.W.2d 402, 405 (Tex.App.—Dallas 1991, pet. ref'd). Accordingly, we overrule appellant's third issue. Because we have found that the trial court's action did not amount to a comment on the evidence, we do not reach the subsequent issue of the mistrial, as this was based on the assumption that the trial court acted improperly in commenting on the evidence.

Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.


Mackey K. Hancock
Justice


Do not publish.

---

Control by Court. The court shall exercise reasonable control over the mode and order of interrogation of witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.