655·15

PETITION NO. PD-0655-15

IN THE

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 18 2015

Abel Acosta, Clerk

ORIGINAL

COURT OF CRIMINAL APPEALS

OF TEXAS AT AUSTIN

---

TIWIAN LAQUINN SKIEF                                    PETITIONER

v.

THE STATE OF TEXAS                                     RESPONDENT

---

### PETITIONER'S PETITION FOR DISCRETIONARY REVIEW

---

On Petition for Discretionary Review from the Fifth District Court of Appeals in No. 05-12-00223-CR Affirming Conviction in No. F10-35936-L from the Criminal District Court No. 5 of Dallas County, Texas.

FILED IN
COURT OF CRIMINAL APPEALS

AUG 19 2015

Abel Acosta, Clerk

ORAL ARGUMENT REQUESTED

TIWIAN LaQUINN SKIEF

TDCJ #01769917

COFFIELD UNIT

2661 FM 2054

TENNESSEE COLONY, TX. 75884

PRO SE.

## IDENTITY OF JUSTICES, JUDGE, PARTIES, AND COUNSEL

BEFORE JUSTICES BRIDGES, FITZGERALD, AND MYERS: George Allen Sr. Courts Bldg., 2nd floor, 600 Commerce St., Dallas, Tx. 75202.

TRIAL JUDGE: The Honorable Carter Thompson presided over the case at 133 N. Riverfront Blvd. Dallas, Texas 75207.

PETITIONER-APPELLANT: Tiwian Laquinn Skief, TDCJ #01769917, Coffield unit, 2661 FM 2054, Tennessee Colony, Tx. 75884.

TRIAL COUNSEL FOR PETITIONER: Mr. Roger Haynes, and Mr. Phillip Linder, 3500 Maple Ave., Ste.400, Dallas Tx. 76219.

APPELLATE COUNSEL FOR PETITIONER: Mr. David J. Pire, 4144 N. Central Expressway, Suite 250, Dallas, Texas 75204.

RESPONDENT-APPELLEE: The State of Texas

TRIAL COUNSEL FOR STATE: Assistant District Attorney(s) Miss Stephanie Mitchell and Mr Dewey Mitchell, 133 N. Riverfront Blvd. L.B. 19, Dallas, Tx. 75207.

APPELLATE COUNSEL FOR STATE: Craig M. Watkins, Criminal Distict Attorney of Dallas County, 133 N. Riverfront Blvd., L.B.19, Dallas, Texas 75207.

# TABLE OF CONTENTS

| CONTENTS: | PAGE # |
|---|---|

Cover page     i

Identity of Justices, Judge, Parties, and Counsel     ii

Table of Contents     iii

Index of Authorities     v

Statement regarding oral argument     vi

Statement of the case     vii

Statement of procedural history     viii

Statement of jurisdiction     ix

Questions for review:     x

1· When deciding whether the State is entilted to an instruction on limiting the right of self-defense; did the Fifth District Court of Appeals unreasonably apply the facts of this case, and to a standard, subscribed in Lee, Fink, and Bumguardner, that conflicts with the facts—along with the justified decisions—in Lee, Fink, and Bumguardner? 1-7

2· Does the Fifth District Court of Appeals' decision conflict with Wall v. State, and is their decision unreasonable when the Court of Appeals acknowledges that Riketta Johnson's statement was an excited utterance—but refuses to use the correct standard hed in Wall? 7-10

3· Did the U.S. Supreme Court intend for the State

## TABLE OF CONTENTS

**CONTENTS**:                                                    **PAGE #**

Courts to limit (or restrict) the term, or defi-
nition of "Testimonial" to solely relate a state-
ment, declaration, or affirmation to law inforce-
ment based agencies only—calling for this Illus-
trious Court of Criminal Appeals' power of Super-
vision?                                                            10-13

Prayer for Relief                                                  14

Inmate Declaration                                                 15

Proof of Mailing                                                   16

Memorandum Opinion (See motion to suspend rule 68.4(j) affixed)

# INDEX OF AUTHORITIES

**CASELAW:** | **PAGE #**

1. Bumguander v. State, 963 S.W.2d 171 (Tex.App.--Waco, 1998) — 1,2,3

2. Coronado v. State, 351 S.W.3d 315 (Tex.Crim.App. 2011) — 13

3. Ex Parte Tiwian Laquinn Skief, No. WR-82,496-01 (Tex.Crim.App. May 13, 2015)(Unpublished Op.) — viii

4. Fink v. State, 97 S.W.3d 739 (Tex.App.--Austin, 2003) — 1,2

5. Lee v. State, 259 S.W.3d 785 (Tex.App.--[1st dist] Houston, 2007) — 1,2

6. McCarty v. State, 227 S.W.3d 415 (Tex.App.--Texarkana, 2007) — 11,12

7. Skief v. State, No. 05-12-00223-CR (Tex.App.--Dallas, May 21, 2013)(Unpublished Op.) — viii,1,3,4 6-7,8,11

8. U.S. v. Brito, 427 F.3d 53 (1st Cir. 2005) — 9

9. Wall v. State, 184 S.W.3d 730 (Tex.Crim.App. 2006) — 7-9

**TEXAS LAW:** | **PAGE #**

1. Penal Code: 9.31(b)(5)(A) — x,1
   9.31(b)(5)(B) — 2

2. Rules of Appellate Procedure: 66.3(a) — ix,7,10
   66.3(f) — ix,7,10,13

**Other:** NONE.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested due to the everchanging caselaw that pertains to the Petitioner's issues, or questions, at hand that will be benificial to this Honorable Court of Criminal Appeals.

## STATEMENT OF THE CASE

Petitioner was charged by a single indictment of Murder in cause number F10-35936-L which was pending in the Criminal District Court No. 5 of Dallas County, Texas, the Honorable Carter Thompson was the presiding Judge.

On February 6, 2012, Petitioner pled not guilty to the offense as charged in the indictment and a jury trial was held on February 6-10, 2012, (RR3-4). Petitioner was convicted, and received a sentence of fifty (50) year of imprisonment, (CR 66, 69-70; RR6, 126; RR7, 62). Petitioner timely filed a Motion for New Trial that was denied by operation of law. (CR 72, 73).

## STATEMENT OF PROCEDURAL HISTORY

Petitioner timely appealed to the Fifth District Court of Appeals in Dallas, Texas. See Skief v. State, No. 05-12-00223-CR, Mem. Opinion (Tex.App. —Dallas, May 21, 2013)(unpublished Opinion). Justice Lana Myers handed down Petitioner's Memorandum Opinion on May 21, 2013. id. The Petitioner filed a State Habeas Corpus Application seeking for an out-of-time Petition for Discretionary Review. This Honorable Court granted Petitioner an out-of-time Petition on May 13, 2015. See Ex Parte Tiwian Laquinn Skief, No. WR-82,496-01 (Tex.Crim.App. May 13, 2015)(Unpublished Per Curiam Opinion).

Petitioner did not file a Motion for Rehearing within the Fifth District Court of Appeals. Petitioner timely filed a motion to extend the deadline for filing his Petition for Discretionary Review, and this Honorable Court granted the motion and extended the deadline to September 7, 2015. See Skief v. State, No. PD-0655-15 (Tex.Crim.App. May 29, 2015)(Postcard) (The Honorable Court also suspended rule 9.3(b) of the Tex.R. App.Proc. on May 29, 2015).

Petitioner files his Petition for Discretionary Review on or before September 7, 2015, as required.

Pursuant to the Texas Rules of Appellate Procedure, Rule 66. 3, this Honorable Court of Criminal Appeals has jurisdiction to fully measure out, but not limited to, in deciding whether to grant this Petition as follows:

1· Pursuant to Rule 66.3(a), Petitioner believes that the Fifth District Court of Appeals' decision conflicts with State, as well with the U.S. Supreme Court decisions on the same issue.

2· Pursuant to Rule 66.3(f), Petitioner believes that the Fifth District Court of Appeals' decision has so far sanctioned a departure, calling for this Honorable Court of Criminal Appeals power of supervision.

3· Finally, under this Honorable Court's power of supervision (Rule 66.3(f)), Petitioner implores this Honorable Court to interpret the U.S. Supreme Court's intent of whether or not It intented to limit (or restrict) the term "Testimonial" to law inforcement based agencies only.

1· When deciding whether the State is entitled to an instruction on limiting the right of self-defense (under the Penal code 9.31(b)(5)(A)); did the Fifth District Court of Appeals unreasonably apply the facts of this case, and to a standard, subscribed in Lee, Fink, and Bumguardner v. State, that conflicts with the facts—along with the justified decisions—in Lee, Fink, and Bumguardner? See Memorandum Opinion at 4, 6-7; RR5, 139-45; RR5, 135-36; RR5, 68-70; RR5, 135,177; RR5, 120.

2· Does the Fifth District Court of Appeals' decision conflict Wall v. State, and is their decision unreasonable when the Court of Appeals acknowledges that Riketta Johnson's statement was an excited utterance—but refuses to use the correct standard held in Wall? See Memorandum Opinion at 14; RR4, 125-45.

3· Did the U.S. Supreme Court intend for the State Courts to limit (or restrict) the term, or definition of "Testimonial" to solely relate a statement, declaration, or affirmation to law inforcement based agencies only—calling for this Illustrious Court of Criminal Appeals' power of supervision? See Memorandum Opinion at 12,14; RR4, 125-45.

## QUESTION ONE

When deciding whether the State is entitled to an instruc-tion on limiting the right of self-defense (under the Penal code 9.31(b)(5)(A)); did the Fifth District Court of Appeals unreasonably apply the facts of this case, and to a standard, subscribed in Lee [v. State, 259 S.W.3d 785 (Tex.App.—Houston, 1st Dist, 2007)], Fink [v. State, 97 S.W.3d 739 (Tex.App. —Austin, 2003)], and Bumguardner v. State [963 S.W.2d 171 (Tex.App. —Waco, 1998)] that conflicts with the facts—along with the justified decisions —in Lee, Fink, and Bumguardner?

The Petitioner questions the Fifth District Court of Appeals decision because of the conflicting facts, within other sister court's of appeals, that was used to overrule the Petitioner at hand. Nevertheless, the Petitioner does acknowledge that the Fifth District Court of Appeals did correctly set out the Standard held in Lee v. State, 259 S.W.3d at 789, and Fink v. State, 97 S.W.3d at 743. See Skief v. State, No. 05-12-00223-CR, pg.4 (Tex.App. —Dallas, May 21, 2013). However, the Conflict here lies with the second prong to determine whether a limiting self-defense instruction should be given? Therefore, this question should be carefully answered: Is there evidence (facts) that shows Petitioner sought an explanation from or discussion with the Complainant concerning their differences? Truly the answer lies in the following!

In Lee, the Houston Court of Appeals concluded that an ex-

ception to the self-defense on instructing the jury about Lee seeking a discussion or an explanation (pursuant to Penal Code 9.31(b)(5)(B) was justified. Because according to the State's witnesses, the car Lee was in stopped on the street. Sledge remained in the case. Lee got out. Lee, with a gun in his hand, walked down a driveway towards Alexander (Complainant). Lee told Alexander, "you robbed me. Your not gong to rob me no more." The Houston Court also noted that "at another point in his testimony, Mr. Vallery stated that Lee said, You're not going to rob nobody else." Lee then shot Alexander before Alexander could obtain the weapon that Alexander carried in his waistband. Lee, 259 S.W.3d at 790.

In Fink, the Austin Court of Appeals concluded "that a rational jury could infer from the circumstantial evidence that fink left the Complainant, went to his apartment to arm himself then left the apartment, and went downstairs to look for Pollard (complainant) "to see if the guy was coming after them" and solely sought for an explaination or discussion, then show the decease five times when pollard reached behind him to obtain what was believed to be a gun. Fink, S.W.3d at 743.

Axiomly, both Lee and Fink received their reasoning from a Waco District Court of Appeals held in Bumguander v. State [963 S.W.2d 171, 175-76 (Tex.App. —Waco, 1998)]. The Waco Court of Appeals concluded "that Bumguardner sought an explaination or discussion with Hinton when: Studer testified that she talked

with Bumguarnder at 2:00am the day of the shooting. She said that Bumguarnder was depressed and upset that his wife would not stay home. She testified that Bumguarnder said he was going to kill "Scooter" (Hinton). Studer also testified that Bumguarnder admitted that he had been looking for "Scooter" and Sheila while carrying a gun that night before the shooting. Bumguardner testified that he packed a gun and went to the continental cowboy to look for Sheila. Reedy, the boucer at the continental cowboy, testified that Bumguarnder walked through the bar and left. As he exited the bar and walked toward his truck, encountered Hinton and summey, along with Harper. Wutnesses testified that Bumguarnder was upset and angry and words were exchanged. Bumguarnder demanded to know where his wife was. The evidence exists which shows that Bumguardner ahd differences with Hilton and sought for that explaination. Id. 963 S.W.2d at 175-76.

Contrarily, the Fifth District Court of Appeals unreasonably concluded that a rational trier of fact could find Petitioner sought an explanation from or discussion with the Complainant after Petitioner's car suddenly swered and struck or nearly struck the Complainant, finding no error in the charge. See Skief v. State, No. 05-12-00223-CR, pg 6-7 (Tex.App.—Dallas, May 21, 2013). The Petitioner's Dallas Court of Appeals relied on the following four facts, that was present by the State through Alexander:

1. Suddenly, a white chrysler 300 pulled onto the street,

"whipped toward the man that was walking toward the rear of the mazda, and "clipped" him. To Alexander, it looked as though the driver of the chrysler deliberately tried to hit the man and that hex was trying to harm the guy." Skief v. State, pg.5.

2· Complainant being angry, and quickly walked toward to the car that clipped him and he did not have a weapon. Skief v. State at pg 5-6.

3· Petitioner stood in between the door and his car, watching the guy walking toward him; and,

4· After driving through the intersection, Alexander continued watching the two men in his rearview mirror, did not hear a gunshot but saw the man who had exited the mazda "jump" or "flinch," then turn around. Skief v. State, pg 6. At that point Alexander called the police. Id.

Although it can be debated that Petitioner struck or nearly struck the Complainant (by other mitigating evidence), what evidence can be agreed on by all witnesses at trial? All witnesses agree that the complainant's car was in the middle of the road, on compton (being the busiest road in the neighborhood) and the Petitioner veered around the car to avoid hitting the mazda, and drove onto carver street. See State's Exhibit 4; RR5, 139-40. The sole purpose and intent for driving onto carver was that Petitioner was going to deliver some drugs to a client on Avalon St. as a usual practice. RR5, 135-36.

Within the second point of the Fifth Dsitrict Court of Ap-

peals' holding, both Alexander and Petitioner agreed that the complainant wrathfully approached the Petitioner. See RR5, 68-70, 143-45. Complainant made a statement to petitioner "I told you I was gone(sic) kill you." being only 10 feet away from the Petitioner. RR5, 143-45. Not one witness testified that the Petitioner said anything to the complainant. Not one witness testified that the Petitioner sought out an explaination with the complainant. Axiomly it was the complete opposite, the complainant was the one seeking for the discussion and explaination at hand. Both the State and Defense witnesses support this fact. RR5, 68-70, 143-45.

The third point of the Fifth District Court of Appeals' decision is that Petitioner stood in between the door and his car. It is true that Alexander saw the Petitioner in between his car door and the car because the Petitioner was looking for his phone. RR5, 135. Once the Petitioner found his phone he then shut the door and start walking towards the house (through the filed) on Avalon Street to deliver drugs to his client. RR5, 135, 177. Again both witnesses on each side agrees to this fact!

And lastly, the Fifth District Court of Appeals concluded that, while Alexander was looking through his rearview mirror, he saw the complainant jump or flinch the turn around. At this point Alexander called the police. Additionally, the State's eye witness testified that he did not see a weapon on either the Petitioner or complainant. RR5, 101. Nevertheless, the Petitioner is

not contenting whether or not he shot the complainant, instead the entire theory of the defense is that Petitioner shot complainant in self-defense.

At this point, the only witness at tirla that has described the self-defense shooting was the Petitioner. All the facts at trial shows that the complainant wrathfully approached Petitioner. The Petitioner has searched the entire record, and has found that **not one witness testified** to the erroneous conclusion that "the Petitioner sought out and/or approached complainant." Compare the record with Skief v. State, No. 05-12-00223-CR, pg 6 (Tex.App.——Dallas, May 21, 2013). The one peice of evidence that came into trial from the Petitioner was during a phone conversation, Petitioner said: "the dude tried to do me, you know." RR5, 120. What is authentic about this statement? The authentication is that Petitioner was not in court and did not know that it was going to be admitted by the State. And this very statement corroborates Petitioner and Alexander's testimony that it was the complainant that searched for the explaination and/or discussion with the Petitioner, not the other way around as the Fifth District Court of Appeals has done.

Therefore, is there evidence (facts) that shows the Petitioner sought an explaination from or discussion with the complainant concerning their differences? NO! Truly and accurately speaking, no testimony from either Petitioner or Mr. Alexander supports the inference that Petitioner sought out and/or insti-

gated the conversation with the complainant. Finally, the Petitioner implores this Honorable Court of Criminal Appeals to **grant** this petition and hold that the Fifth District Court of Appeals erroneously applied the facts to the correct standing law. And further, hold that the State is not entitled to a limiting self-defense instruction at hand. See Tex.R.App.Proc., 66.3(a)(f).

## QUESTION TWO

Does the Fifth District Court of Appeals' decision conflict with Wall v. State, and is their decision unreasonable when the Court of Appeals acknowledges that Riketta Johnson's statement was an excited utterance—but refuses to use the correct standard held in Wall [v. State, 184 S.W.3d 730, 742-43 (Tex.Crim.App. 2006)]?

The Fifth Court of Appeals held that, "Nothing in the statement or in the circumstances under which it was made would lead an objective witness reasonably to believe the statement would be available for use at a later trial. The statement was not made in any kind of formal setting or structured environment, nor was it a response to a police interrogation, inquiry, or investigation." See Skief v. State No. 05-12-00223-CR, pg 14 (Tex.App. Dallas, May 21 2013).

Like many of the Texas Courts of Appeals, this Honorable Court rejected any per se or categorical approah to the excited utterance and testimonial hearsay inquires. See Wall v. State,

184 S.W.3d at 742-43. Next this Honorable Court agreed with the First Circuit that the "excited utterance and testimonial hearsay inquiries are separate, **but related**. While both inquiries look to the surrounding circumstances to make determinations about the declarant's mindset at the time of the statement, their focal points are different. The excited utterance inquiry focuses on whether the declarant was under the stress of a startling event. The testimonial hearsay inquiry focuses on whether a reasonable declarant, similarly situated (thatis, excited by the stress of a startling event), would have had the capacity to appreciate the legal ramifications of her statement." Wall v. State, 184 S.W.3d at 742 (emphasis added). In this case at hand, Riketta Johnson had the capacity to appreciate the legal ramification of her very statement.

"These Parallel inquires require an ad hoc, case-by-case approach. An inquiring court first should determine whether a particular hearsay statement qualifies as an excited utterance. If not the inquiry ends." Wall v. State, 184 S.W.3d at 742. The Petitioner agrees that Riketta's statement to Barbara Castro (the house mom of a gentlemen's club) was an excited utterance. See, Skief v. State, No. 05-12-00223-CR at page 12,14. If, however, the statement so qualifies (which it does), "the court then must look to the attendant circumstances and assess the likelihood that a reasonable person would have either retained or regained the capacity to make a testimonial statement at the time of the

utterance. <u>U.S. v. Brito</u>, 427 F.3d 53, 61-62 (1st cir 2005)".
<u>Wall v. State</u>, 184 S.W.3d at 742.

Barbara Castro is a "House mom" at the local strip club called lipstick (RR4, 125). Being the house mom of that kind of business, she is normally the one to call the police when something goes wrong. Riketta Johnson is no stranger to informing Castro of something and when the police arrives she will relay Riketta's statement(s) to the police. This is a normal practice for this type of business. Riketta Johnson knew when she told Castro: "my boyfriend shot someone" (RR4, 128), that Castro would retain her testimony, and Riketta had the capacity to appreciate the legal ramifications of her statement(s) to Castro.

"By way of guidance, the Brito Court noted that generally statements made to police while the declarant (or other person) is still in personal danger are not made with consideration of their legal ramifications becuase the declarant usually speaks out of urgency and a desire to obtain a prompt response; thus, those statements will not normally be deemed as testimonial. But **after to immediate danger has dissipated**, a person who speaks while still under the stress of a startling event is more likely to comprehend the larger significance of his words: 'If the record fairly supports a finding of comprehension, the fact that the statement also qualifies as an excited utterance **will not alter its testimonial nature**.'" <u>Wall v. State</u>, 184 S.W.3d at 742 (citing Brito, 427 F.3d at 62, other citations omitted)(emphasis

added).

Riketta Johnson, being under the stress of the phone call, was not in immediate danger and Riketta knew, and comprehended the larger significance of her words. In basic terms the record fairly supports her statements to Castro, and the fact that the statement also qualifies as an excited utterance, **will not alter Riketta's testimonial nature!** The fact that the Fifth District Court of Appeals overruled the Petitioner, and is now justifing their decision by saying: "On the contrary, ... the statement appears to have been an excited utterance made to a co-worker (Mem. Op. pg 14)." is not logical and unreasonable when resembled with this Honorable Courts decision in Wall. Further, justifing Riketta's statement, giving this Honorable Court plenty of reason to grant this Petition. Tex.R.App.Proc. 66.3(a).

Finally, when the Fifth District Court of Appeals acknowledges the two-prong test set out in wall, is the Fifth Court of Appeals bound to properly use it? Petitioner believes that they are, and the Fifth Court of Appeals refuses to do so. Therefore, this petition should be granted and reviewed in the light of wall v. State. See Tex.R.App.Proc. 66.3(a)(f).

## QUESTION THREE

Did the U.S. Supreme Court intend for the State Courts to limit (or restrict) the term, or definition of "Testimonial" to solely relate a statement, declaration, or affirmation to law

inforcement based agencies only—calling for this Illustrious Court of Criminal Appeals' power of supervision?

The Petitioner wishes to incorporate question Number two's facts with argument into this argument as well.

In McCarty v. State [227 S.W.3d 415 (Tex.App.—Texarkana, 2007)], the Texarkana Court of Appeals explained the classic examples that are given by Crawford. McCarty held, "Classic examples of statement(s) that are testimonial are: (1) ex parte in-court testimony or its functional equivalant; (2) extrajudical statements contained in formalized testimonial materials; and (3) statements made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. 227 S.W.3d at 418. Although these are the classic examples provided by crawford, does this classic example(s) give the right for state courts to limit the testimonial analysis to law enforcement based agencies only? Petitioner believes that this example was **not intended**, by the U.S. Supreme Court, to limit the facts and circumstances of one's case to law enforcement based agencies only.

Within Petitioner's case, the Fifth District Court of Appeals basically denied relief because Barbara Castro—the house mom of lipstick, a strip club—was not a law enforcement based agency of some type. See Skief v. State, No. 05-12-00223-CR, Pg 14 (Tex.App.—Dallas, May 21, 2013).

The McCarty Court goes on to explain what "nontestimonial"

statements were: "The facts and circumstances demonstrate the statement's nontestimonial character: the declaration was not made in any formal setting or structured environment; it was not made to an officer or in connection with any kind of investigation; it was made at a time when McCarty was not under suspicion; it was not made in response to any question; it was made during or immediately after the event that produced it; it was a spontaneous excited utterance made while the complainant was in the grip of fear and without time for reflection; it was more in the nature of a cry for help than testimony; and the tender age and excited state of the complainant weigh against the statement being testimonial." McCarty, 227 S.W.3d at 418.

One Axiomatic fact about this holding is that the McCarty Court did not cite, or rely on any authority while taking this upon themselves to limit or restrict the Crawford's Confrontation analysis. Id. Further, the other Courts seem to have adopted this same view. However, Petitioner believes that the U.S. Supreme Court did not intend for their term, or definition to be limited or restricted to law enforcment based agencies only!

Within Petitoiner's case at hand, the State intentionally violated the confrontational clause, then cloaks it in the excited utturance rule within the Texas Rules of Evidence 803(2). On top of this, the Fifth Court of Appeals places their rubber stamp of approval to this kind of behavour.

Riketta Johnson was subpoenaed by the State, along with

Barbara Castro. Both were present and ready to testify. At not one time did the State explain to the court that Riketta would testify—making the hearsay statement admissible and satisfy the confrontational clause. Instead, the State insisted on using Castro's hearsay testimonial statement to violate the U.S. Supreme Court Precedent. In Coronado v. State [351 S.W.3d 315, 322 (Tex.Crim.App. 2011)], this Honorable Corut held that "the only indicium of reliability sufficient to satisfy constitutional demands is the one the constitution actually prescribes: **Confrontation.**" Id. at 332.

Just like the Fifth Court of Appeals, are the Court of Appeals allowed to limit or restrict the definition of testimonial down to law enforcement based agencies only? Therefore, the Petitioner is invoking this Honorable Court's power of supervision (rule 66.3(f)), and jurisdiction to interpret the U.S. Supreme Court's intent of whether or not It intented to limit (or restrict) the term "Testimonial" to law inforcement based agencies only. And Petitioner implores this Honorable Court to answer in the form of granting this petition to make precedent in the State of Texas.

Finally, the Fifth District Court of Appeals should not be allowed to limit the recipient of a statement to law enforcement based agencies only.

Petitioner prays that this Honorable Court of Criminal Appeals will grant this Petition, and/or make precedent in the state of Texas.

Tiwian Laquinn Skief

#01769917-Coffield unit

2661 FM 2054

Tenn.Colony, Tx. 75884

Pro se.

I, Tiwian Skief, TDCJ #01769917, being currently incarcerated in the TDCJ-CID Coffield unit in Anderson County, Texas, declares that the foregoing is true and correct under the penalty of perjury.

Executed this day of August $\underline{11}$, 2015.

_____

Tiwian Laquinn Skief

#01769917-Coffield

2661 FM 2054

Tenn. Colony, Tx. 75884

Pro se.

## PROOF OF MAILING

I, Tiwian Skief, TDCJ #01769917, being incarcerated in the TDCJ-CID Coffield unit in Anderson County, Texas, declares that I have placed this Petition for Discretionary Review into the internal mailing system on August 11, 2015.

This is true and correct under the Penalty of perjury.

Executed this day of August 11, 2015.

_____

Tiwian Laquinn Skief

Coffield unit- #01769917

2661 FM 2054

Tenn.Colony, Tx. 75884

Pro se.

AFFIRM; and Opinion Filed May 21, 2013.



In The
Court of Appeals
Fifth District of Texas at Dallas

_____

No. 05-12-00223-CR
_____

TIWIAN LAQUINN SKIEF, Appellant
V.
THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5
Dallas County, Texas
Trial Court Cause No. F10-35936-L

## OPINION

Before Justices Bridges, FitzGerald, and Myers
Opinion by Justice Myers

Appellant Tiwian Laquinn Skief was convicted of murder and sentenced to fifty years in prison. In four issues, he contends the trial court erred (1) by refusing to remove portions of the jury charge that were not supported by the evidence; (2) not admonishing the jury after it was "contaminated" by witnesses and/or trial participants; (3) appellant's confrontation clause rights were violated; and (4) the prosecutor engaged in improper jury argument. We affirm.

DISCUSSION

*Limiting Instruction on Self-Defense*

In his first issue, appellant argues the trial court erred by refusing to remove portions of the jury charge that were, according to appellant, not supported by the evidence. He contends the trial court erred by overruling his objection to the portion of the jury charge that restricted appellant's self-defense claim if appellant sought an explanation from the complainant, Tyvanti

Johnson, while unlawfully carrying a handgun. As objected to by appellant, the relevant portion

of the court's charge reads as follows:

> Our law further provides that it is unlawful for a person to intentionally or knowingly or recklessly carry a handgun on or about his person, unless he is traveling.
>
> A person acts "recklessly" or is "reckless" with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances, as viewed from the standpoint of the person charged.
>
> For a person to be deemed "reckless" there must actually be both a substantial and unjustifiable risk that the result complained of will occur, and that the person acting was actually aware of such risk and consciously disregarded it.
>
> While a defendant has a right to seek an explanation from or discussion with another concerning a difference with the other person, the use of force against another is not justified if the defendant sought an explanation from or discussion with another concerning a difference with the other person while the defendant was unlawfully carrying a handgun.
>
> Now, therefore, if you find and believe from the evidence beyond a reasonable doubt that the force used by the defendant against TYVANTI JOHNSON was at a time when the defendant was seeking an explanation from TYVANTI JOHNSON, but at that time the defendant was unlawfully carrying a weapon, to-wit: a handgun, you will find against the defendant's claim of self-defense.

Defense counsel objected to the portions of the above-quoted charge pertaining to

unlawful carrying of a weapon and the exception to self-defense. He argued the circumstances

required for the exception to apply were not raised by the evidence:

> I would submit to the Court that that circumstance has not been raised by the evidence. I would submit that the evidence that's before the jury is, both from the testimony of the Defendant and of Eric Alexander, that Tyvanti Johnson, the victim in this case, was the one who first hopped out of his car in the middle of Compton Street and was attempting to flag down or approach [appellant]; that he was the one who initiated the confrontation that resulted in Tyvanti Johnson's death.
>
> In this circumstance, I do not believe that the evidence could be interpreted by the jury to the contrary, including phone records and everything else that's been introduced by the State and by the Defense, testimony as well. A reasonable jury could never conclude that it was [appellant] who initiated this discussion in any way, shape or form. And I would submit that's improper in charging the jury with that language.

The State responded that there was evidence supporting the submission of the charge:

> So it's the State's contention that there is evidence in front of this jury that [appellant] had differences with the victim and, on that day, by pulling that car over, by getting out and going toward or making himself in a position to seek out a discussion about those differences, getting out of that car, as he sees where the victim was, that that has been raised and the jury can absolutely interpret this in a reasonable manner, to suggest that he armed himself and went and had himself a confrontation with the victim in this case.

The trial court overruled the objection and presented the charge to the jury.

Jury charge error is reviewed under the standard set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Under that standard, we first determine whether there was error in the charge. *Id.* at 174. If error occurred and appellant objected at trial, the reviewing court determines whether the error was "calculated to injure" the appellant's rights, which means there must be "some harm" to the accused resulting from the error. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza*, 686 S.W.2d at 171). If, however, the appellant did not object, the reviewing court will reverse only if the error resulted in "egregious harm." *Id.* (quoting *Almanza*, 686 S.W.2d at 171).

The penal code provides that a person is justified in using deadly force when and to the degree the person reasonably believes it is immediately necessary to protect himself from another's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a). An exception to self-defense applies when the actor "sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was: (A) carrying a weapon in violation of section 46.02." *Id.* § 9.31(b)(5)(A).

"A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun . . . if the person is not: (1) on the person's own premises or premises under the person's control." *Id.* § 46.02(a). A person also commits an offense if he intentionally, knowingly, or recklessly carries on or about his or her person a

handgun in a motor vehicle that is owned by the person or under the person's control at any time in which: . . . (2) the person is: (A) engaged in a criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic," or is "prohibited by law from possessing a firearm." *Id.* § 46.02(a–1)(2).

A defendant is entitled to an instruction on every defensive issue raised by the evidence. *Elmore v. State*, 257 S.W.3d 257, 259 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A defensive issue may be raised solely by the defendant's testimony. *Id.* In determining whether the defendant's testimony raises the issue of self-defense, the truth of the defendant's testimony is not at issue. *Id.* Generally, issues like provocation or whether the defendant carried a gun to a discussion are fact issues that are included in the charge as limitations to self-defense. *See id.* A charge under section 9.31(b)(5)(A) limiting the right of self-defense is properly given when (1) self-defense is an issue; (2) there are facts in evidence that show the defendant sought an explanation from or discussion with the victim concerning their differences; and (3) the defendant was unlawfully carrying a weapon. *Lee v. State*, 259 S.W.3d 785, 789 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Fink v. State*, 97 S.W.3d 739, 743 (Tex. App.—Austin 2003, pet. ref'd).

The factors noted in *Lee* and other decisions are present in this case. First, appellant testified he shot Tyvanti in self-defense; the charge instructed the jury on the law of self-defense. Furthermore, appellant did not dispute he was unlawfully carrying a weapon. He admitted at trial that he was carrying a handgun in violation of his parole and that he was selling drugs. As for the second factor, whether there were facts in evidence showing the defendant sought an explanation or discussion with the victim concerning their differences, appellant argues there was no evidence he ever approached Tyvanti. Appellant contends his testimony and the testimony of Eric Alexander, an eyewitness, show that the complainant approached appellant,

and that nothing in their testimony supports the inference that appellant sought out or instigated the conversation with Tyvanti.

Appellant, known as "Hitman," and Tyvanti, known as "Eastwood" or "626," grew up together in Irving and were friends into their adult years. Although not related, they had close ties through their families and "were basically like cousins." By December of 2010, however, their friendship had deteriorated. Several weeks before the shooting, they had a confrontation at an Irving, Texas apartment complex. Tyvanti arrived at the apartments with his girlfriend, Tanesha Jones, in a Mazda 626. Appellant and his cousin, Rashad Townsend, arrived shortly afterwards in a gold Jeep. Appellant approached Tyvanti's car, pounded on the passenger's side door, and yelled that Tyvanti owed him money. Tanesha could not hear the entire argument between Tyvanti and appellant because she stayed in the car, but she heard appellant say, "On blood, you're not going to be driving this car no more." Tyvanti then took off his shirt and said, "Let's fight." At that point, appellant got back into the gold Jeep and drove away, almost hitting Tyvanti.

Alexander testified that he was driving north on Compton street in Irving at approximately 1:20 p.m. on December 28, 2010, when he saw a Mazda 626 stop in the road. The driver of the Mazda "jumped" out of the car and walked toward the back of the car. Suddenly, a white Chrysler 300 pulled onto the street, "whipped" toward the man that was walking toward the rear of the Mazda, and "clipped" him. To Alexander, it looked as though the driver of the Chrysler deliberately tried to hit the man and that "he was trying to harm the guy." After "clipping" the man, the driver of the Chrysler drove to the next intersection, Compton and Carver streets, immediately turned onto Carver, and parked his car. As Alexander drove by, he could see the man in the Mazda walking towards "the car that clipped him." Alexander "couldn't see or hear what he was saying, but he was upset." He did not appear to be carrying

-5-

any type of weapon. As for the driver of the Chrysler, Alexander added: "I saw a guy standing outside his car, in between the door and his car. He was standing, watching the guy walking toward him. Whatever he was saying." After driving through the intersection, Alexander continued watching the two men in his rearview mirror. He did not hear a gunshot but saw the man who had exited the Mazda "jump" or "flinch," then turn around. At that point, Alexander knew "something bad" had happened, and he pulled over and called 911. On cross-examination, he testified that he did not see a weapon in either driver's hand and that he could not identify appellant in a six-photo lineup as one of the individuals he saw.

The suspect vehicle, a white Chrysler 300, belonged to Mark Sample, who was arrested based on outstanding warrants and interviewed by the Irving police. During his first interview, which occurred on the day of the offense, Sample admitted owning the car and told the police he had been in possession of it the entire day of the offense. He denied any knowledge of the shooting. In a second interview with the police the following day, Sample told the Irving police detective, Joe Hennig, that appellant was driving the Chrysler at the time of the offense and that they traded cars at the Lipstick Gentlemen's Club, where appellant's girlfriend, Riketta Johnson, worked as a dancer. When he testified in his defense, appellant told the jury he traded cars with Sample on December 28, 2010 because he "wanted to kind of show off a little bit" for an ex-girlfriend[1] he planned to meet.

We conclude the trial court properly instructed the jury. There is sufficient evidence from which a rational trier of fact could find appellant sought an explanation from or discussion with the complainant after appellant's car suddenly swerved and struck or nearly struck the complainant. Because there is evidence raising the issue, we therefore conclude the trial court did not err by instructing the jury under section 9.31(b)(5)(A), and that the jury charge does not

---

[1] Appellant identified the ex-girlfriend as Stormy Roberson.

contain error. *See Lee*, 259 S.W.3d at 790-91. We overrule appellant's first issue.

### *Article 36.22*

In his second issue, appellant contends the trial court erred by failing to admonish the jury on the record after the jury was allegedly "contaminated by contact with witnesses and/or participants in the case while outside the courtroom."

During the trial, immediately following the lunch break on the first day of witness testimony, the trial court held a hearing outside the presence of the jury "regarding contact between members of the jury and members of the public in the gallery, who are watching the trial transpire." The trial court asked the State for its position on the issue, and the State told the trial court that "the Defense is better able to explain" the situation. Defense counsel advised the court as follows:

> Right after the lunch break, a civilian who was sitting in the audience watching the trial approached my investigator, indicated to [my investigator] that she was a relative of [appellant]. Kind of like a stepsister, is how she described it. I don't think it's actually a blood relationship. It doesn't sound like it. She indicated she had been in here watching the trial.
>
> When she was out in the hallway, two of the jurors approached her. One of the ladies goes to her church, she said, and one of the men is someone that she used to work with. They asked her why she was here. She simply said she couldn't talk to them, because—I don't know if she said, "Because you're jurors, I can't talk to y'all." She told me that she just told them, "I can't talk to you." She didn't talk to them about the case at all. She didn't even tell them why she was here.
>
> Just for record purposes, the State and myself and the Court have had a discussion off the record about how we should handle that situation. And I believe we have decided that, rather than make a big in-court discussion about it, the State and the Defense have agreed that the Court may, with the bailiff, go back to the jury room, reurge the admonitions to the jury and inquire about whether or not anything about that relationship or that encounter would influence the two jurors in question, about whether or not that would affect them as jurors in the case.

The State agreed with defense counsel's comments and the proposed solution. The trial court stated: "With the agreement of both sides, the Court will meet with the jurors, escorted by a bailiff, and stress to them the importance of restricting their deliberations to the facts and

evidence presented in court and not take into consideration their previous contact with members in the gallery." Counsel for the State and defense reiterated their understanding and agreement regarding the proposed solution. The record then reflects a "[b]rief pause in the proceedings," at which point the trial judge and court bailiff went to the jury room to speak with the jury.

As a prerequisite to presenting a complaint for appellate review, appellant must present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling. TEX. R. APP. P. 33.1(a)(1)(A); *Rhoades v. State*, 934 S.W.2d 113, 119-20 (Tex. Crim. App. 1996); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.). A defendant "may not, for the first time on appeal, urge error not raised at trial." *Nelson v. State*, 607 S.W.2d 554, 555 (Tex. Crim. App. 1980). Even constitutional rights may be forfeited by the failure to object. *Castaneda*, 135 S.W.3d at 723.

A juror must make decisions at the guilt and punishment phases using information obtained in the courtroom: the law, the evidence, and the trial court's mandates. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art. 36.22. The primary goal of article 36.22 is to insulate jurors from outside influence. *Chambliss v. State*, 647 S.W.2d 257, 266 (Tex. Crim. App. 1983); *Bokemeyer v. State*, 355 S.W.3d 199, 203 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "Therefore, if a violation is shown, the effectiveness of possible remedies will be determined in part by whether the conversation influenced the juror." *Ocon*, 284 S.W.3d at 884.

"A violation of Article 36.22, once proven by the defendant, triggers a rebuttable presumption of injury to the accused, and a mistrial may be warranted." *Id.* "When determining whether the State sufficiently rebutted the presumption of harm, we view the evidence in the light most favorable to the trial court's ruling and defer to the trial court's resolution of historical

–8–

facts and its determination concerning credibility and demeanor." *Id.* The presumption may be rebutted by a showing that the case was not discussed or that nothing prejudicial about the accused was said. *See Bokemeyer*, 355 S.W.3d at 203; *Gates v. State*, 24 S.W.3d 439, 443 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Because a mistrial is an extreme remedy, it is appropriate "'only when residual prejudice remains' after less drastic alternatives are explored." *Ocon*, 284 S.W.3d at 884-85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)). Instructions to the jury are generally considered sufficient to cure most improprieties occurring during trial. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

On appeal, appellant contends the trial court erred by admonishing the jury off-the-record and that it "failed to issue findings of fact or conclusions of law regarding why the Court believed that the brief pause in proceedings was sufficient to cure any harm caused by the *ex parte* contact between the jurors and the public." Appellant argues his right to an impartial jury was violated.

But appellant did not request findings of fact or conclusions of law and failed to object or otherwise express disapproval with the trial court's actions. The court of criminal appeals has concluded:

> The right to a jury verdict entirely untainted by any potential outside influence strikes us as properly categorized among the "[a]ll but the most fundamental rights [that] are thought to be forfeited if not insisted upon by the party to whom they belong." We perceive no reason that a defendant should not be deemed to have forfeited the protections of Article 36.22 in the event that he becomes aware of its breach during the course of the trial but fails to call the transgression to the trial court's attention so that the error may be rectified or, barring that, so that the defendant can make a timely record for appeal.

*Trinidad v. State*, 312 S.W.3d 23, 29 (Tex. Crim. App. 2010). Because he did not object to the trial court's actions, appellant failed to preserve this issue for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A). Furthermore, it was defense counsel who proposed the off-the-record admonishment. Appellant should not benefit from a complaint he invited and agreed to. We

–9–

also note that, according to defense counsel's explanation of the communication, the gallery member in question did not discuss the case with the two jurors or even explain her presence. Consequently, even if we assumed the error was preserved, no abuse of discretion has been shown. We overrule the second issue.

### *Confrontation Clause*

In his third issue, appellant argues his rights under the Confrontation Clause were violated by Barbara Castro's testimony concerning the content of conversations she had with appellant's girlfriend on the day the complainant was shot.

During the State's case-in-chief, the State called Castro as a witness. The trial court held a hearing outside the presence of the jury to address appellant's objections to Castro's testimony. Castro testified at the sub rosa hearing and that she worked as the "house mom" at the Lipstick Gentlemen's Club, where appellant's girlfriend Riketta worked as a dancer. She testified that Riketta had previously mentioned that she had a boyfriend known as "Hitman," and that Riketta had the nickname "Hitman" tattooed on her body.

On December 28, 2010, Riketta used Castro's phone throughout the day. At approximately 1:30 or 2:00 p.m. that day, a man (who did not identify himself) called Castro's phone and asked to speak to Riketta. Castro handed the phone to Riketta, who was standing nearby. Castro recalled that, when Riketta finished the telephone call, she was "real agitative [sic] and nervous" and seemed to be under the stress or excitement of the call. Riketta told Castro she needed to leave because "someone had been shot." In her statement to the police the following day, Castro said that Riketta then told her, "I have to go, because my boyfriend just shot someone."

Defense counsel objected that Castro's testimony regarding what Riketta said did not qualify as an excited utterance because Riketta was not "reacting to the stress of the event." He

–10–

also argued that Castro's testimony was not the best evidence because Riketta had been subpoenaed to testify. Defense counsel added, "It's a confrontation clause objection as well, Your Honor." The prosecutor responded that Riketta's availability eliminated any Confrontation Clause issues. The prosecutor also explained that witness unavailability was not a prerequisite for admitting a statement as an excited utterance and reiterated that the statement met the requirements for an excited utterance. After noting that the first sentence of rule 803 specifically states the exceptions apply even though the declarant is available as a witness, the court overruled appellant's objection and allowed the testimony.

Castro testified before the jury that she worked as the "house mom" at the Lipstick Gentlemen's Club, where Riketta had danced for four years. She testified that Riketta used her cellular phone at various times on December 28, 2010, and that, at approximately 1:30 or 2:00 p.m. that day, Riketta received a call from a male caller. Castro answered the phone initially but handed the phone to Riketta, and stood next to her as she took the call. Prior to taking the telephone call, Riketta was "[h]er regular, normal self," "[i]n a good mood," and "[r]eady to go on the floor," but Castro noticed Riketta's demeanor or manner changed after the call. She was "just real nervous, agitative [sic]" and "upset" after taking the call. Castro testified that Riketta also breathed heavily, seemed very startled by whatever she heard on the phone, and paced the floor. Riketta told Castro: "Oh, mom, I need to leave. I need to leave." When Castro replied, "You need to calm down and tell me what's wrong," Riketta said: "I need to leave. He shot somebody." Castro testified that Riketta indicated "her boyfriend" was the person who had shot someone. Castro also told the jury that Riketta had her boyfriend's nickname, "Hitman," tattooed above her left breast.

Castro testified that she told Riketta she could not drive until she calmed down. Riketta responded that she did not have her car because her "boyfriend had it," and that her boyfriend

-11-

was coming to pick her up in his friend Mark's car. On cross-examination, Castro admitted that she was not on the telephone during the call and could not hear what was said—only Riketta's reaction and what Riketta subsequently told her.

On appeal, appellant contends the trial court's decision to allow Castro's testimony violated his Confrontation Clause rights. He argues that, by calling Castro to testify even though "Riketta was subpoenaed by the State and was apparently available to testify," the State impermissibly elicited hearsay instead of having the declarant, Riketta, testify to the statement that her boyfriend had "shot somebody." Appellant does not contest the statement's admissibility as an excited utterance; he argues his right to confrontation was violated by the introduction of a "testimonial statement of an available witness via hearsay."

Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling , i. e., whether a statement is testimonial or nontestimonial, de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). This is particularly so because the legal ruling of whether a statement is testimonial under *Crawford v. Washington* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant. *Crawford v. Washington*, 541 U.S. 36, 52 (2004); *Wall*, 184 S.W.3d at 742-43.

The Confrontation Clause guarantees the right of an accused "to be confronted with the witnesses against him." *See* U.S. CONST. AMEND. VI; *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991)(en banc). This right of confrontation is a fundamental right and is applicable to the states by virtue of the Fourteenth Amendment. *Shelby*, 819 S.W.2d at 546. The primary interest protected under the Confrontation Clause is the right of cross-examination. *See id.* In *Crawford*, the United States Supreme Court explored the parameters of this right and concluded it was a violation of the Sixth Amendment for a court to admit testimonial statements of a witness who did not appear at trial unless that witness was unavailable to testify and the

defendant was afforded a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68; *see also De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

In *Crawford*, the Court explained that generally a statement should be considered "testimonial" if it constitutes a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51. Additionally, the Court explained that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.*; *see also Giles v. California*, 554 U.S. 353, 376 (2008); *Davis v. State*, 268 S.W.3d 683, 710 (Tex. App.—Fort Worth 2008, pet. ref'd). While the Court in *Crawford* declined to provide a comprehensive definition of "testimonial" evidence, it noted that certain classes of "core" statements are regarded as testimonial, including:

> ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, . . . extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, . . . statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]

*Id.* at 51-52 (internal citations and quotations omitted). "Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." *Id.* at 52.

Under the *Crawford* framework, the primary focus in determining whether hearsay statements are "testimonial" is on the objective purpose of the interview or interrogation, not the declarant's expectations. *See De La Paz*, 273 S.W.3d at 680. "Generally speaking, a hearsay statement is 'testimonial' when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* "In such a situation, the person offering information is literally bearing testimony." *Id.*

-13-

The fact that a statement qualifies under a hearsay exception, such as an excited utterance under rule of evidence 803(2), does not necessarily free it from the strictures of the Confrontation Clause. *See McCarty v. State*, 227 S.W.3d 415, 417 (Tex. App.—Texarkana 2007), *aff'd*, 257 S.W.3d 238 (Tex. Crim. App. 2008); *see also* TEX. R. EVID. 803(2) (providing a hearsay exception for "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). Rather, the event giving rise to an excited utterance informs the Confrontation Clause analysis and sheds light on the inquiry as to the statement's testimonial nature. *See Wall*, 184 S.W.3d at 740; *McCarty*, 227 S.W.3d 418; *see also Tarver v. State*, Nos. 05-06-01091-CR & 05-06-01667-CR, 2008 WL 2514312, at *3 (Tex. App.—Dallas Nov. 5, 2008, pet. ref'd) (not designated for publication) (statement made by witness that defendant "had a gun" was not testimonial and could be admitted under Confrontation Clause as excited utterance exception).

In this case, we cannot conclude the complained-of statement was "testimonial" under *Crawford*. Nothing in the statement or in the circumstances under which it was made would lead an objective witness reasonably to believe the statement would be available for use at a later trial. The statement was not made in any kind of formal setting or structured environment, nor was it a response to a police interrogation, inquiry, or investigation. On the contrary, when viewed objectively, the statement appears to have been an excited utterance made to a co-worker. The statement, taken in context, explained why Riketta seemed startled by whatever she had heard on the phone and why she appeared nervous, agitated, upset, and paced the room. Under these circumstances, we cannot conclude the trial court erred by admitting the statement as an excited utterance. We overrule appellant's third issue.

### Improper Jury Argument

In his fourth issue, appellant contends the trial court "committed reversible error by

failing to remedy the State's improper closing argument." Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010); *Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007). Counsel is generally given wide latitude in drawing inferences from the evidence as long as they are reasonable, fair, legitimate, and offered in good faith. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996).

Appellant takes issue with two portions of the State's closing argument. During the State's closing argument, appellant's trial counsel objected to speculation and arguing outside the record when the prosecutor stated:

> [PROSECUTOR]: . . . . Do you recognize who Hitman is? Do you recognize him yet? Are you starting to see him? Because the other day, you probably didn't. When he starts talking about "you better lace her up"—just so we're clear, he's talking about getting witnesses ready to come in here and put one over on you twelve citizens.
>
> [DEFENSE COUNSEL]: Your Honor, I'm going to object to speculation. Arguing outside the evidence.
>
> [PROSECUTOR]: It's a reasonable deduction from the evidence.
>
> THE COURT: The jury will recall the evidence as they heard it. Proceed.

Later, during the rebuttal portion of the State's closing argument, the prosecutor made the following comments:

> [PROSECUTOR]: . . . . Now, let's go through all the lies that he told you. When he first got on the stand, what's the first thing he says? "I heard about him shooting two people across town in Irving just a week before this happened, and I was so terrified for my life. Because I saw the girl he shot. She was walking on a little walker." He even tried to make the little hand motions. "She was terrified. She was shaking. She thought I was coming to finish the job." Now, granted, I'd be scared of somebody with a tattoo named "Hitman" that's a drug lord out of my area. But he wants you to believe that she thought he was working with Tyvanti to come and kill her.
> Ladies and gentlemen, what did those jail calls show you? What did Detective Wyatt tell you? She was shot December 21st, and she had been

-15-

hospitalized up until at least the point where the detective interviewed her on December 29th. That's one day after he killed Tyvanti.

[DEFENSE COUNSEL]: I object to a misstatement of the evidence.

COURT: The jury will recall the evidence, as they heard it. Proceed.

According to the record, following each of appellant's objections, the trial court did not rule on the objections. The trial court stated: "The jury will recall the evidence as they heard it. Proceed." An objection to argument must be pressed to the point of procuring a ruling or the alleged error is waived on appeal. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *DeRusse v. State*, 579 S.W.2d 224, 235 (Tex. Crim. App. 1979). The court of criminal appeals has explained:

> We have previously said that while the "traditional and preferred procedure" for a party to preserve error is to (1) object in a timely manner, (2) request an instruction to disregard, and (3) move for a mistrial if the instruction to disregard seems insufficient, such a sequence is not essential to preserve complaints for appellate review. The only essential requirement to ensure preservation is a timely, specific request that is refused by the trial court.

*Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (internal citations omitted); *see also* TEX. R. APP. P. 33.1(a).

After the trial court instructed the jury, appellant did not ask for any further relief. In this instance, the trial court's response was not a ruling on the objection and it is insufficient to preserve error. *See DeRusse*, 579 S.W.2d at 235; *see also Mayberry v. State*, 532 S.W.2d 80, 84 (Tex. Crim. App. 1976) (op. on reh'g) ("[j]ury will recall the evidence" does not preserve error); *Nichols v. State*, 504 S.W.2d 462, 464-65 (Tex. Crim. App. 1974) (same). Because appellant did not request further relief that was refused by the trial court, he failed to preserve his fourth issue for our review. *See* TEX. R. APP. P. 33.1(a). We overrule appellant's fourth issue.

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120223F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TIWIAN LAQUINN SKIEF, Appellant

No. 05-12-00223-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F10-35936-L.
Opinion delivered by Justice Myers.
Justices Bridges and FitzGerald participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 21st day of May, 2013.

/Lana Myers/
_____
LANA MYERS
JUSTICE